## Metz v. Soule, Kretsinger & Co.

1. **Accord and Satisfaction:** WHERE THERE ARE SEVERAL WRONG DOERS. An accord and satisfaction by one of several wrong doers will estop the injured party to demand relief from the others.

2. ———: ———: RULE APPLIED. Where a convict in the penitentiary, who received injuries in the course of his emyloyment under the contractors for convict labor, petitioned the General Assembly for relief, which was accorded him, it was *held* that he could not maintain an action against the contractors for damages for the same injury.

3. **Constitutional Law:** WRONG BY THE STATE. The maxim, "The king can do no wrong," does not imply that the State cannot do an act for which the citizen is not entitled to redress. Its real meaning is, that the redress must be voluntary and cannot be coerced. For the State to know of an injury and to redress it are inseparable.

*Appeal from Des Moines District Court.*

THURSDAY, OCTOBER 18.

THE plaintiff, a convict in the Iowa penitentiary, claims of the defendants, contractors of the penitentiary, the sum of $20,000, alleging as grounds thereof, that defendants owned and were running a large amount of machinery, shafting, etc., in said penitentiary, which was negligently, carelessly, and dangerously constructed, coupled and managed; and that plaintiff, while at work about said machinery under the orders and directions of defendants, on account of the dangerous construction and management of the shafting, was caught and severely injured.

The defendants, amongst other defenses, allege that plaintiff presented to the Fourteenth General Assembly of the State of Iowa his petition praying of the State relief on account of the injuries sustained, claiming in his petition, that at the time of receiving the injuries he was acting under the orders of the officers and guards of the Iowa Penitentiary at Fort Madison, and that the injuries were in consequence of the negligence of such officers, and that the State was responsible therefor; and that said General Assembly passed an act

entitled "An act for the relief of Joseph Metz," approved May 8, 1872, appropriating out of the State treasury one hundred and fifty dollars per annum, payable monthly. That the act went into force May 9, 1872, and that Metz accepted said sum in satisfaction and accord of his claim against the State. There was a jury trial, and a verdict and judgment for plaintiff for $4,250. Defendants appeal.

*Craig & Collier* and *McCrary, Miller & McCrary*, for appellants.

*Gilmore & Anderson*, for appellee.

DAY, J.—It was proved at the trial that the plaintiff caused to be presented to the Fourteenth General Assembly of the State of Iowa a petition asking for pecuniary relief on account of the injuries for which he now sues, claiming that he was acting in obedience to the order of an agent of the State when he was injured; and that, though he had protested against doing the work which caused his injury, he was peremptorily ordered and compelled to do the same, and that the State should be responsible for the act of its agent.

It was further proved that a bill was passed granting Metz one hundred and fifty dollars per annum, payable monthly, (See Private Acts of Fourteenth General Assembly, page 117), and that plaintiff had been receiving $12.50 a month under said act. The defendants asked the court to instruct the jury as follows: "If plaintiff made application by petition to the General Assembly of the State of Iowa, on account of his said personal injuries received while a convict in the Iowa Penitentiary, and in such petition claimed relief on the ground that he sustained said injuries while acting in obedience to the orders of an agent of the State, under whose control he was in said Penitentiary, and that though he protested against doing the work he was ordered to do by an agent of the State, yet he was peremptorily ordered to do the same by the agent of the State, and claimed relief on the ground that the State was responsible for the damage done his person by said injuries, and upon such application of

Metz, the General Assembly appropriated out of the State treasury the sum of one hundred and fifty dollars per annum, payable monthly, by an act approved May 8, 1872; and if Metz since has in fact received such monthly payment under said act, that would be in law a satisfaction of his damages on account of said personal injuries, and the plaintiff cannot recover in this suit." The court refused this instruction, and charged that: "The fact that plaintiff petitioned the legislature of the State for relief on account of his injuries, does not estop him from setting up his claim for damages in this suit; and the granting his prayer for relief by the legislature of the State, does not in law amount to an accord and satisfaction of plaintiff's claim for damages set up in this suit." The defendants excepted to this action of the court, and assigned it as error.

The instruction asked should have been given. The plaintiff, by prosecuting his claim against the State, as a wrong doer, in the only way available to him, and by accepting the benefits of the act passed in his favor, is estopped to deny that the injury occurred through the wrongful act of the State. The most that he can now claim is that the defendants are jointly wrong doers, and with the State, jointly liable for the injury inflicted.

It is well settled that an accord and satisfaction by one of several wrong-doers, is a satisfaction as to all. *Merchant's Bank v. Curtiss*, 37 Barb., 317; *Ellis v. Bitzer*, 2 Hammond, 263; *Bronson v. Fitzhugh*, 1 Hill, 85; *Gilpatrick v. Hunter*, 24 Maine, 18; *Thurman v. Wilde*, 3 Perry and Davison's Rep., 289; *Walker v. McCullough*, 4 Greenleaf, 422; *Turner v. Hitchcock*, 20 Iowa, 310. We deem it unnecessary to elaborate this case beyond a citation of these authorities. They seem to us to be decisive of the case, and conclusive that the instruction asked should have been given. There can be but one satisfaction for a wrong. The law considers that the one who has paid for the injury occasioned by him, and has been discharged, committed the whole trespass and occasioned the whole injury, and that he has therefore sat-

1. ACCORD and satisfaction.

isfied the plaintiff for the whole injury which he received. *Gilpatrick v. Hunter*, 24 Maine, 18.

In the view we have taken of the case, it is unnecessary to consider and determine the numerous other errors assigned and argued.

REVERSED.

## ON REHEARING.

DAY, J.—A petition for rehearing was filed in this case, in which it is strenuously urged that the foregoing opinion ignores the maxim that, *The king can do no wrong.*

This maxim, we understand, does not mean that the king or government is incapable of doing an act for which a subject should have redress. In 1 Blackstone's Commentaries, p. 246, it is said: " Besides the attribute of sovereignty, the law also ascribes to the king, in his political capacity, absolute

3. CONSTITU-TIONAL LAW: wrong by the state.

perfection. ' The king can do no wrong: ' which ancient and fundamental maxim is not to be understood as if everything transacted by the government was of course just and lawful, but means only two things: First, That whatever is exceptionable in the conduct of public affairs, is not to be imputed to the king; nor is he answerable for it personally to his people, for this doctrine would totally destroy that constitutional independence of the crown, which is necessary for the balance of power in our free and active, and therefore compounded constitution. And, secondly, it means that the prerogative of the crown extends not to do any injury; it is created for the benefit of the people, and, therefore, cannot be exerted to their prejudice." In this last sense the maxim would mean simply that the king has no right to do a wrong.

In a note to the page of Blackstone above quoted, referring to this maxim, it is said: "Perhaps it means that, although the king is subject to the passions and infirmities of other men, the constitution has prescribed no mode by which he can be made personally amenable for any wrong which he may actually commit. The law will, therefore, presume no wrong

where it has provided no remedy." And in 2 Blackstone, p. 255, it is said: "That the king can do no wrong is a necessary and fundamental principle of the English constitution; meaning only, as has formerly been observed, that, in the first place, whatever may be amiss in the conduct of public affairs is not chargeable personally on the king; nor is he, but his ministers, accountable for it to the people. And, secondly, that the prerogative of the crown extends not to do any injury, for being created for the benefit of the people, it cannot be exerted to their prejudice. Whenever, therefore, it happens that, by misinformation or inadvertence, the crown hath been induced to invade the private rights of any of its subjects, though no action will lie against the sovereign, (for who shall command the king?) yet the law hath furnished the subject with a decent and respectful mode of removing that invasion, by informing the king of the true state of the matter in dispute; and, as it presumes that to *know of* an injury and to *redress* it are inseparable in the royal breast; it then issues, as of course, in the king's own name, his orders to the judges to do justice to the party aggrieved." This clearly recognizes the doctrine that the king may, through inadvertence or misinformation invade a private right, and do a wrong (for wrong is inseparable from an invasion of right), which it is not only his privilege but his duty to redress. And it is plain from these quotations that the maxim merely means that the redress must be voluntary, and cannot be coerced.

The opinion recognizes this maxim to its fullest extent. It is clearly implied in it that Metz could not have maintained an action against the State on account of his injuries. He did not institute an action. He pursued the *decent* and *respectful mode* of appealing to the State legislature. He represented that he had sustained an injury under circumstances rendering it just and proper that the State should compensate him. The State, instead of shielding itself behind the maxim that the king can do no wrong, as it might have done, through its legislators, acted upon the principle that to *know of an injury and to redress it are inseparable.* An act was passed for the

relief of Metz, and he accepted the benefits of its provisions. There can be but one satisfaction for an injury.

Suppose that the legislature, instead of acknowledging the justice of the claim of Metz, and passing an act for his relief, had simply authorized him to sue the state, and given him an opportunity to enforce his demand in the ordinary way, and that pursuant to such legislation he had sued, recovered and collected the judgment. Could he afterward maintain an action against the defendants on account of the same injury? It seems to us quite clear that he could not. Then, if he could not recover a second satisfaction if he had enforced and recovered his demand through the courts, upon what principle can he recover a second satisfaction, having been voluntarily tendered, and having accepted redress. Having once sued and recovered of the state, all that he could claim of the defendants would be that they were jointly liable for the injury; and having accepted voluntary satisfaction from the state, that is all that he can claim now. In either case, having been satisfied once the claim is at an end. The fact that the amount which the state allowed is small, is of no consequence. The plaintiff was under no compulsion to accept it. He accepted it voluntarily, and must take the benefit with all its accompanying burdens.

It is claimed, however, that there is nothing in the terms of the act for the relief of Joseph Metz, providing that it shall be taken as an accord and satisfaction, or that its enactment was in discharge of any liability for personal injuries. It is claimed that "it must be held to be a mere act of charity, having no other legal consequences than would follow a pecuniary gift from any other sympathetic hand." The plaintiff presented his petition claiming that the State had done him an injury, and asking redress. This was followed by a statute for his relief. It would be unreasonable to conclude that the act was passed out of mere charity, without any recognition that the injury was one which the State of right ought to redress. Such a conclusion would render the act unconstitutional.

It cannot be claimed that the legislature could constitution-

ally, out of mere charity, pass acts for the relief of the scores of persons who are annually injured upon railroads and in various other manners. It is necessary to the constitutionality of the act, to hold that it was passed to redress an admitted injury.

We are fully content with the views expressed and the conclusion reached in the opinion before announced.

The petition for rehearing is overruled.