108   575
135   227
f135   229

108   575
136   276

PETER C. MILLER v. F. BECK & COMPANY and J. D. EDMUNDSON, Appellant.

**Joint Tort Feasors:** RELEASE OF ONE. Where creditors of a debtor employed the same attorney, and separate attachments on their debtor's property are levied on the creditors claims, neither creditor being in any way interested in the other's claim or its prosecution, they are not joint tort feasors, where the attachments were improperly levied, so that a release as to one of them would discharge the other, as against a claim for damages by the attachment debtor.

SATISFACTION BY ONE: *Attachment.* The payment by one of two wrongful attaching creditors of a judgment for the damages sustained by the debtor from the levy on certain goods of the two writs, but made at the same time and by the same officers, is a bar to an action against the other creditor for the trespass, as it was a single act with one purpose.

SAME. Complete satisfaction for an injury operates to discharge all who are liable th refor, whether they be joint and several wrong

doers, or several wrong doers, or though the party satisfying is in nowise liable for the injury.

SAME. Attachment writs were unlawfully levied by distinct creditors upon the same property at the same time. Thereafter the attachment debtor recovered against one of the creditors damages for such unlawful attachment, and the judgment was satisfied. *Held,* that such satisfaction was a bar to a subsequent action against another of such attachment creditors to recover damages, except as to any costs made on his writ independent of those made under the writ for the levy for which damages were recovered, and for attorney's fees.

ROBINSON C. J. and WATERMAN, J. dissenting.

**Measure of Damages: PARTY TO SUIT.** Damages for wrongful attachment should not be made to depend upon a verdict in a suit to which respondent in damages was not a party.

WATERMAN, J. concurring.

## Appeal from Pottawattamie District Court.—HON. WALTER I. SMITH, Judge.

## WEDNESDAY, MAY 24, 1899.

ACTION at law upon an attachment bond to recover damages for the alleged wrongful suing out of an attachment. Defense, a general denial, and an affirmative plea to the effect that the damages claimed by plaintiff have been paid by the recovery of judgment for the identical items claimed in this case in an action wherein plaintiff recovered upon an attachment bond against other attaching creditors. The case was tried to a jury, resulting in a verdict and judgment for plaintiff, and defendant appeals.—*Reversed.*

*Sims & Bainbridge* for appellants.

*Harl & McCabe* for appellee.

DEEMER, J.—It appears from the evidence that F. Beck & Co., and a co-partnership styled Shaber, Reinthal & Co., were creditors of Peter C. Miller. Apprehensive of their claims, they placed them in the hands of appellants' counsel, who brought actions upon the separate accounts, each of

which was aided by attachment, and directed the sheriff to levy upon certain property belonging to Miller. The writs were issued at the same time, but the sheriff, by direction of counsel, made levy of the Beck & Co. writ first. The other writ, in so far as the personal property is concerned, was levied subject to the one issued in the Beck & Co. case. The personal property was sold as perishable for the sum of five hundred and twenty dollars, all of which, save the sum of thirty-one dollars, applied on rent, was paid into court. Beck & Co. obtained judgment in their action against Miller, and received in part satisfaction thereof the sum deposited in the court, as well as some other money obtained through garnishment proceedings, in all the sum of five hundred and sixty dollars and fifty-three cents. Shaber, Reinthal & Co.'s claim was upon notes amounting to five hundred dollars, which were admitted by Miller. Miller made defense to their action, and pleaded a counterclaim for the wrongful suing out of the writ. The items of damages which he claimed in that case were identical with those sought to be recovered in this. That case went to trial, resulting in a verdict and judgment for defendant, Miller; and it thus appears that he was allowed five hundred dollars for the wrongful suing out of the writ. This amount he has received in full; for the claim against him, to the amount of five hundred dollars, has been satisfied and discharged. The costs and attorney fees taxed for the wrongful suing out of the writ have also been paid.

Appellants' contention on this appeal is (1) that plaintiff has once been paid all damages growing out of the alleged wrongful suing out of the attachment, and therefore cannot recover them a second time; (2) that the plaintiffs in the two attachment suits were joint wrongdoers, and that the judgment in the Shaber, Reinthal & Co. case was a release and satisfaction of all claims against either.

It is familiar doctrine that a person injured by an act of joint wrongdoers is entitled to but one satisfaction for the

injury sustained, and that, although all the wrongdoers are jointly and severally liable, complete satisfaction by one operates as a discharge of all. *Turner v. Hitchcock,* 20 Iowa, 310; *Seither v. Traction Co.,* 125 Pa. St. 397 (17 Atl. Rep. 338, 11 Am. St. Rep. 905, and note). This is upon the theory that each is liable for the entire wrong, and that recovery from one is for the full amount, and hence satisfaction as to one is satisfaction or release as to all. Even where this rule prevails, it is generally held that part payment of a claim for damages by one joint wrongdoer, if understood to be in part satisfaction, is not a release in full, but only *pro tanto;* and that if the apparent intention is not to release or discharge the debt, but to release only that one from liability, it is held to be a covenant not to sue, and the others remain liable. *Ellis v. Esson,* 50 Wis. 138 (6 N. W. Rep. 518); *Chamberlain v. Murphy,* 41 Vt. 110; *Shaw v. Pratt,* 22 Pick. 307; Cooley Torts, p. 139; *Couch v. Mills,* 21 Wend. 424. It is also well settled that a person injured, whether by the joint or several wrongs of others, is not entitled to receive more than one satisfaction. As said by Miller, J., in *Lovejoy v. Murray,* 3 Wall. 1: "When plaintiff has accepted satisfaction in full for the injury done him, from whatever source it may come, he is so far affected, in equity and good conscience, that the law will not permit him to recover again for the same damages." In accordance with this rule, it has frequently been held that the validity and effect of a release of a cause of action does not depend upon the validity of the cause of action, and that if the claim is made against one, and it is satisfied, all who may be liable are discharged, whether the one released be liable or not. *Leddy v. Barney,* 139 Mass. 397 (2 N. E. Rep. 107); *Tompkins v. Railway Co.,* 66 Cal. 163 (4 Pac. Rep. 1166); *Brown v. City of Cambridge,* 3 Allen 474; *Butler v. Ashworth,* 110 Cal. 614 (43 Pac. Rep. 386); *Metz v. Soule,* 40 Iowa, 236.

It becomes material for us to inquire then, *first,* whether plaintiffs in the attachment suits were joint tort feasors; and, if they were not, then, *second,* whether appellee has received satisfaction for his injuries in the Shaber, Reinthal & Co. case. Now, while it is true that the writs were sued out at the same time, and plaintiffs in attachment were represented by the same counsel, yet neither creditor was interested in the success of the other, and neither attempted to aid the other in any manner. Each acted independent of the other, and for the purpose of securing his own claim. What each did was designed for his own interest, and the fact that they acted simultaneously, through the same attorneys and for the same reasons, did not make their acts joint. *Brewster v. Gauss,* 37 Mo. 518. This is not a case in which a single object is accomplished by the simultaneous service of different writs, as was *Stone v. Dickinson,* 5 Allen 29. We are of opinion that the creditors in this case were not joint wrongdoers, and that a release or satisfaction as to one would not necessarily discharge the other. If there was such release or discharge, it was because plaintiff has received satisfaction for the wrong done him by accepting a verdict and judgment in the Shaber, Reinthal & Co. case; and to this we now turn our attention.

In his counterclaim for damages, as well as in this action, he sued for conversion of his personal property, and for the damages incident thereto; claiming in each pleading that his property had been taken, used, and converted by that particular attaching creditor. If this action was trover or conversion, then it is clear that he cannot have payment for his property twice. The rule is well settled that, upon payment of a judgment for conversion, if not before, the title to the property passes to the judgment defendant and plaintiff cannot again sue for conversion of the identical property, for the plain reason that he cannot give title and has no longer any interest in the property; for his right thereto has passed to the first judgment defendant.

But it is said that appellee was asking for damages done his property in each suit, and that he is entitled to damages for what each defendant did. If he had asked in each suit for the damages done by the defendant against whom his action was brought, there would be no doubt of his position. But such is not the fact. The writs were levied upon the ·same property, to-wit, a stock of wall paper, moldings, etc., and the garnishments ran against the same debtor of Miller. They were levied at the same time, and the trespass resulted from but a single act of the sheriff, done under the two writs, it is true, but done at one time, and for the single purpose of turning the property into money, that it might be applied on whatever judgments were obtained. Now, in the Shaber, Reinthal & Co. case, appellee asked for all the damage done his property. The court instructed that he was entitled to all that was done, and, having accepted the results of that suit, he is presumed to have received all that he is entitled to claim, except it be some items which were peculiar to the second suit. The trial court, in the case at bar, instructed that appellee was entitled to the same and identical damages which he claimed in the Shaber, Reinthal & Co. case; but further said they should credit appellant with the amount allowed Miller in the former suit. It is of these instructions that appellant complains. It is perfectly plain, we think, that, if appellee was allowed and paid all the damages done his property upon his counterclaim in the Shaber, Reinthal & Co. case, he cannot recover the same items again, in a subsequent suit against appellants. He undoubtedly made claim in that case to all damages done his property. Shaber, Reinthal & Co. seemed content to pay all if they paid any, for they did not attempt to shift any part of the responsibility upon another. The court before which the action was pending said to the jury, in its charge, that they should allow all damages done the property, whether direct or consequential, and that ought to satisfy appellee, except as we have said as to certain items which

were peculiar to this case. These are the costs of levying the writ, which were not paid in the former proceeding; and, *second,* attorney's fees for defending against this particular attachment. Attorney's fees are to be taxed by the court, however, and consequently were not referred to in the instructions in either case. It may be that the costs of levying the attachment were not allowed in the former action, but this we have no occasion to determine, for the reason that the instructions objected to include all other items of damages done to the property by the levy of the writ.

If it be conceded, however, that each attaching creditor was liable simply for the damage done by him, and that appellee in his counterclaim against Shaber, Reinthal & Co. did not seek to, and did not in fact, recover more than the damage done by that particular creditor, yet it is manifest the instructions given in the case were wrong, for the reason that the whole matter is made to depend upon the verdict of a jury in an action to which appellant was not a party. The court instructed in each case that appellee was entitled to all the damages done his property, and the elements of damage which the jury were told to consider were precisely the same in each case. In the case at bar, however, the jury was told to credit the amount allowed by the jury in the former case upon the allowance made in this. Surely, this is a very uncertain way by which to determine the amount of damages done by this appellant. Suppose the jury, in the Shaber, Reinthal & Co. case, had fixed the damages at half the amount actually done, appellant would then be compelled to respond for much more than the damages done by it; or, if the jury in the first case had allowed too much, then appellant would not be called upon to pay what it ought. In other words, the whole matter of damages is made to depend upon the verdict of a jury in a case to which appellant was not a party, and which was in no manner binding on it. This thought illustrates the vice of the instructions relating

to damages and to the plea of payment, interposed by appellant. Had the two attaching creditors been guilty of separate acts of trespass, or had they levied upon different items of property, or had one done a wrong to the property in such a manner as that the particular damage inflicted thereby could be ascertained, then it is likely that satisfaction as to one would not release the other. But where, as in this case, the injury is an entirety, and the damages cannot be apportioned, and the injured party sues for the wrong done, and recovers judgment, which he accepts as compensation for the wrong, such recovery will be a bar to any further claim for damage, for the plain reason that the law will not allow more than one satisfaction for a wrong done or injury inflicted. See cases heretofore cited, and especially *Metz v. Soule,* 40 Iowa, 236.

As we have seen, it is entirely immaterial that the one from whom satisfaction was demanded and received was not liable for the entire damage. Indeed, if he were a stranger, and not responsible for any part of it, the rule would be the same. It is important that we distinguish in this connection between what the law denominates a "release" and what is called a "satisfaction." A release may be given, although no part of the damage has been paid, and a technical release to one who is not a joint wrongdoer will not necessarily release another, who may have had some connection with the wrong. See, as illustrating this rule, *Ellis v. Esson,* 50 Wis. 138 (6 N. W. Rep. 518); *City of Chicago v. Babcock,* 143 Ill. 358 (32 N. E. Rep. 271); *Long v. Long,* 57 Iowa, 497; *Knapp v. Roche,* 94 N. Y. 329; *Turner v. Hitchcock,* 20 Iowa, 310. A satisfaction, however, by whomsoever made, if accepted as such, is a bar to further proceedings on the same cause of action. Payment is a satisfaction, and, under the facts disclosed by this record, the case should have been submitted on the theory that all damages to the property, direct and consequential, were paid by

the former judgment, and that appellant's liability was for costs made upon its writ, independent of those made on the Shaber, Reinthal & Co. attachment, and for attorney's fees. The judgment of the district court is REVERSED.

WATERMAN, J. (specially concurring).—I concur in the reversal of this case because of the error in the instruction relating to the measure of damages. Upon the other propositions discussed, I am with the dissent.

ROBINSON, C. J. (dissenting).—I. The theory of the appellants on the original submission was that Beck & Co. and Shaber, Reinthal & Co. were joint wrongdoers, and that the satisfaction of the claim of the plaintiff, as against the latter, operated to release the former. It was not understood by the court, nor apparently by counsel for the appellee, that the appellants claimed that satisfaction of the demand of the plaintiff against Shaber, Reinthal & Co. would operate as a release of Beck & Co., even though they were not joint wrongdoers, and the original opinion was written to meet the theories on which the case was submitted. If it can be said that the appellants did make the claim indicated, it was done so obscurely that it was properly disregarded. It is fairly presented for the first time in the petition for rehearing. But it has been the well-settled rule of this court not to grant relief on grounds asked for the first time in a petition for rehearing. *McDermott v. Railway Co.,* 85 Iowa, 192. Therefore I am of the opinion that the appellants are not entitled to the relief given by the decision of the majority.

II. I agree with the majority that Beck & Co. were not joint wrongdoers. Having reached that conclusion, it seems to me that it should follow, as a logical result, that payment by one of them would, at most, operate to discharge the other only to the extent of the payment. But the majority, after holding that there was not a joint wrong, illogically, as I think, hold that, as the writs of attachment were levied

upon the same property, at about the same time, the trespass. resulted from but a single act of the sheriff, and for the single purpose of turning the property into money, that it might be applied on whatever judgments were obtained. The fact is that the writs were not levied simultaneously. That of Beck & Co. was the one first levied upon the stock, and full possession was taken under it, not for the purpose of turning the property into money, that it might be applied on "whatever judgments" should be obtained, but to hold the property for the purpose of applying it in payment of any judgment which Beck & Co. should recover. The levy under the Shaber, Reinthal & Co. writ was made after the other levy was completed, and was only designed to hold so much of the property previously levied upon as should not be required to satisfy the claim of Beck & Co. The possession taken under the first writ was not in any manner affected by the second levy. This must have been the case, if there was not joint action and a joint trespass.

I think the majority err in saying that the court instructed the jury in the Shaber, Reinthal & Co. case that Miller was entitled to all the damages done his property. The material inquiry as to damages in that case was, what damages were caused by the wrongful suing out of the writ in that case and the proceedings thereunder? and the damage which resulted from the writ issued in favor of Beck & Co. was not referred to in the pleadings, nor in the charge to the jury, nor was it properly involved in the case. Therefore, if Miller recovered in that case for damages caused by Beck & Co., he recovered that to which he was not entitled; but that fact, according to ordinary rules, concerned only the parties to that action.

The question to be determined in this action, after it has been ascertained that the writ was wrongfully sued out, is, what damage was caused by the wrongful suing out of the writ in this case? not the aggregate damages caused by the wrongful suing out of the two writs. If it be conceded, however, for the purpose of this case, that credit for any

payment made in the case of Shaber, Reinthal & Co., on account of damages which were in fact caused by the issuing of the writ in the Beck & Co. case, should be given in this case, it does not follow that such payment operated to discharge Beck & Co. from further liability. As we have seen, no claim was made in the Shaber, Reinthal & Co. case for damages caused by the Beck & Co. writ. Since the firms were not joint wrongdoers, it cannot properly be claimed, as it seems to me, that payment made in the Shaber, Reinthal & Co. case should operate to discharge all claim for damages which resulted from both writs. No claim of that kind was made in that case. Beck & Co. were not parties to this action, and were not bound by the adjudication. Had the jury in the case found the damages caused by the wrongful issuing of this writ to have been one thousand dollars, and Shaber, Reinthal & Co. had paid but five hundred dollars of the amount, Miller, on any theory of the case, would have been entitled to recover of Beck & Co. for damages caused by the writ in excess of five hundred dollars, but Beck & Co. would not have been bound by this adjudication in the other case; and on what principle can it be held that Miller would have been estopped, by that adjudication, to recover of Beck & Co. the amount of damages he had actually sustained for which payment had not been made? Had the firms been joint wrongdoers, the payment of a part of the damages sustained by Miller would not have discharged the other from liability, unless payment was made in full satisfaction of the claim. This is shown by authorities cited in the opinion of the majority. Hence it appears to me, inasmuch as no attempt was made in the Shaber, Reinthal & Co. suit to recover damages caused by the Beck & Co. writ, it should not be said, as a matter of law, that payment of the damages recovered in that case operated as a full discharge of all claim for damages under both writs. I also think that the parties to this action are not, as to each other, bound by the adjudication in the other action, and that the defendants cannot rightly ask for more than that credit be

given in this action for what was actually paid in the other
on account of damages caused by the Beck & Co. writ, and
such credit was allowed under the charge of the district court.
That would not allow the plaintiff to recover more than the
amount to which he is entitled, but would limit him strictly
to a recovery for actual damages and for the malicious suing
out of the writ. Whether the writ was sued out maliciously
is not shown, but, under the charge of the court, the jury
was authorized to award the plaintiff exemplary damages,
if actual damages had been shown. Since the firms were
not joint trespassers, an allowance for the malicious suing
out of the Beck & Co. writ was not and could not have been
involved or adjudicated in the Shaber, Reinthal & Co. case.
The jury found specially in that case that the writ was not
sued out maliciously, but no finding of that character was
made in this case.

It is said in the opinion of the majority that, if Miller
sued in each action for a conversion of the property, he
could not have payment for it twice. The claim of Miller in
the Shaber, Reinthal & Co. case was on the attachment bond
to recover, among other things, for the seizure and sale of
the stock of merchandise; and the court charged the jury,
not that it might allow as for a conversion of the property,
but for loss or depreciation in its value, and that, if it had
been sold by the sheriff for its full value, no damage, by
reason of loss or depreciation, had been sustained. I do not
think there is any ground for claiming that the effect of the
adjudication was to hold that the title to the attached prop-
erty was vested in the attaching creditors. The record
shows that the jury was fully warranted in finding that the
plaintiff did not, in the allowance made in the Shaber, Rein-
thal & Co. case, receive the full amount to which he was
entitled for damages cause by the two writs. Three wit-
nesses testified for the plaintiff respecting the value of his
stock when seized under the writs. The plaintiff testified
that the stock was then worth about three thousand three
hundred dollars, and that the value of the stock and tools,

ladders, and other articles, was about three thousand nine hundred dollars. Another witness testified that the stock, when seized, was worth three thousand two hundred dollars, and the third testified that it was worth two thousand eight hundred dollars. A traveling salesman of Beck & Co. testified that he examined the stock about two weeks after it was attached, and that it was reasonably worth, in Council Bluffs, about five hundred dollars, and could have been replaced new for a sum not exceeding five hundred and seventy-five dollars. Another witness testified for the defendants that the stock was worth, when seized, between seven hundred dollars and eight hundred dollars. It is admitted that the stock was sold by the sheriff as perishable property, about two months after it was seized, for five hundred and twenty dollars. The record does not disclose what was done with the tools, ladders, and other articles not included in the stock, and which are shown to have been worth about six hundred dollars. The plaintiff testified that none of them were returned to him. The estimates given are exclusive of six hundred dollars, which the plaintiff testifies was the value of the good will of his business, which seems to have been destroyed by the attachment. It appears to me clear that the plaintiff did not in the Shaber, Reinthal & Co. case, recover the full amount of his loss; that the amount allowed by the jury in this case was fully warranted by the evidence, and, with that recovered from the other firm, did not exceed his actual loss; and that the decision of the majority operates as a denial of justice. The cases of *Ennis v. Shiley,* 47 Iowa, 552; *Engleken v. Webber,* 47 Iowa, 558; and *Jackson v. Noble,* 54 Iowa, 641, although not precisely in point, tend to support the views I have expressed. The case of *Metz v. Soule* 40 Iowa, 236, was governed by rules of law not applicable in this case; and the case of *Lovejoy v. Murray,* 3 Wall. 1, involved a joint trespass. In my opinion, the decision of the majority is contrary to established and well recognized legal principles, and the judgment of the district court should be AFFIRMED.