## RECEIPT OF INDUSTRIAL INSURANCE NOT A BAR TO AN ACTION FOR DAMAGES AGAINST A STRANGER.

Common Pleas Court of Hardin County.

BIDDINGER, ADMINISTRATOR, v. STEININGER-TAYLOR COMPANY.

Decided, 1915.

*Workmen's Compensation—Award of, Not a Bar to an Action for Damages—Against a Stranger Negligently Causing the Injury.*

An employee who has been injured or the personal representative of an employee who has been killed in the course of his employment, after having applied for and received an award under the workmen's compensation law, and after such award has been paid in full, may maintain an action against a stranger for damages for negligently causing the same personal injury.

Demurrer.

Plaintiff, instituting this action as administratrix of one Alta Biddinger, deceased, in behalf of herself as his widow and his two dependent children, complains in her petition that while her said husband was employed by the Champion Iron Company and engaged in certain work for said employer about the construction of the courthouse building at Kenton, he was injured and killed by certain negligent acts and omissions of defendant, for which she seeks to recover damages in the sum of $15,000.

Defendant has answered this petition, and the second defense in its amended answer reads as follows:

"Second Defense. Defendant for its second defense avers, that on or about April 20, A. D. 1914, Mary L. Biddinger, the plaintiff herein, for herself as the widow of Alta Biddinger, deceased, and on behalf of Catherine Mary Biddinger and Harry E. Newcomb, as the dependents of said Alta Biddinger, de-

ceased, by their attorney, filed an application before the Industrial Commission of Ohio, in the city of Columbus, Ohio, and asked said commission to determine what compensation, as such dependents, should be allowed to them by reason of the death of said Alta Biddinger while in the course of his employment, as provided by Section 27 of the workmen's compensation act.

"That said industrial commission of Ohio, on the hearing of said application awarded and allowed to the said dependents, Mary L. Biddinger, Catherine Mary Biddinger and Harry E. Newcomb, the sum of $2,633.25. That said sum was duly paid to plaintiff, for the joint use of herself, Catherine Mary Biddinger and Harry E. Newcomb, share and share alike, and the same was accepted by her.

"That the said plaintiff, Mary L. Biddinger, is the widow of said Alta Biddinger, deceased, and said Catherine Mary Biddinger is the only child and heir at law of said Alta Biddinger, deceased, and said Harry E. Newcomb is his stepson.

"Defendant avers that the plaintiff, by making said application as aforesaid, to the industrial commission of Ohio, as one of the dependents of said Alta Biddinger, deceased, waived her right to institute this suit; that plaintiff is thereby barred and stopped from asserting any claims for damages against this defendant, and that said compensation received, as aforesaid, is a complete bar to any further recovery of any sum for the death of said Alta Biddinger, deceased.

"Defendant further avers that it is now and was at the time mentioned in plaintiff's petition, to-wit, April 10, 1914, and prior thereto, a subscriber to the state insurance fund provided for in an act creating said liability board of awards (now the Industrial Commission of Ohio) and is entitled to the protection and benefits afforded by said act."

Plaintiff has demurred to this second defense, and its said demurrer, having been argued and submitted, presents the questions of law now before the court for solution.

*Henderson & Durbin,* for plaintiff.
*Mahon & Mahon,* contra.

HENDERSON, J.

Naturally, by reason of the short period of time during which workmen's compensation laws have been in operation, precedent

affords little in the way of first aid to the case stated; the converse of the case has been decided by the Essex county court of common pleas of New Jersey, *Perlsburg* v. *Muller,* 35 N. J. Law Jo,. 202, and by the Industrial Commission of Ohio, *Ridorfo* v. *Telephone Co.,* No. 3139; in both of these cases it was held that an injured employee, after accepting settlement for his claim for damages from a stranger wrongdoer might still successfully prosecute a claim against his employer for compensation for the same injury.

Aside from these decisions and the light they may afford the court is remitted, for a solution of the case stated, to a consideration of the language of the workmen's compensation law, of the reasons for its enactment and of the nature of the relief or compensation awarded by it, together with a consideration of the familiar action at law for damages for personal injuries and the nature of the remedy it gave.

The action at law for damages for personal injuries existed under the common law of England; originally it is probable that its remedy was given entirely independent of any fault or breach of duty on the part of the defendant, being based on the rude principle of justice coeval with the beginnings of civil society—"An eye for an eye and a tooth for a tooth;" at a period in the development of the common law antedating its adoption in this country, however, an award of damages in this action (with some particular exceptions) came to be based and dependent on some tort delict or breach of duty on the part of defendant, in short, upon defendant's negligence, as we commonly understand and state it, or upon his wilful tort.

Confining our attention to that class alone of actions of trespass wherein defendant's negligence was the determining element of his liability, and still further restricting ourselves to the subclass which concerns itself with actions by employee against employer for damages for personal injuries suffered by the former in the course of his employment, the damages given (except in cases of wrongful death wherein under statutes a different rule was laid down) were intended to be a full equivalent for the injuries suffered, as well as money could measure such injuries;

accordingly, juries were told to take into account not only phys-
icians', surgeons' and nurses' bills for care, skill and attention,
loss of time and diminished earning capacity of the injured em-
ployee himself, but such uncertain and speculative elements as
his physical pain, distress and anguish, probability of a short-
ened life, loss of limb, eye or other organ, any maiming or bodily
deformity, impairment of usual faculties, physical or mental;
consideration of such elements of damages was logically neces-
sary in attempting to measure out full compensation, but it de-
prived a verdict in any given case of every element of certainty
and substituted instead a speculation wherein sympathy, pre-
judice and sentiment might play the leading part.

As this common law method came to be tested by the needs of
modern industrial society, its inefficiency became, year by year,
more apparent. The protracted litigation to which it gave rise,
with its attendant high expense, the uncertainty of the final out-
come and the temptation to gamble on the amount of recovery,
were vexatious and unjust to employee and employer alike; it
became a scandal in the legal profession, a reflection upon the
court and a burden and blemish upon the civil state; hence the
recent substitute for it—the compulsory employee's compensa-
tion law.

In construing the extent and meaning of a statute amend-
atory of the common law, Blackstone suggests three points of
consideration of cardinal importance, to-wit: The old law, the
mischief and the remedy. The old law and the mischief have
just been rapidly and superficially sketched: as to the remedy,
the new law gives the employee a certain right to fixed compen-
sation, and takes away, in great measure, his uncertain right to
indefinite damages, at the same time imposing upon the employer
a certain liability to pay a fixed annual premium and relieving
him of an uncertain liability for indefinite damages; it renders
protracted litigation, or litigation at all, unnecessary, and the
high expense formerly incident thereto, impossible; the nature
of the relief given is different; instead of attempting to estimate
a full equivalent in damages for the injury, once for all, which
must necessarily involve the varying and speculative elements

above alluded to, it makes no attempt to measure pain, distress of body and mind, the loss of an eye or limb, etc., in dollars, but awards, instead by rules fixed in advance for all cases, a stated periodical payment, based on the employee's former wages and the probable disabling effects of his injuries.

In framing and passing this law, the Legislature had in mind problems growing out of the relation of employee and employer alone; it modified and in great measure took away from the former his right to sue the latter at law for personal injuries received in the course of employment; but in the general situation itself, there is nothing to warrant a belief that it was considering or intending to take from a citizen his right at common law to hold strangers accountable for failing to use ordinary care toward him; still less that it was aiming to render negligence safe and immune from liability, provided only that it be indulged in by one citizen, not toward his employee but toward a workman engaged in the employment of another.

The language and terms of the new law are next to be examined. A right of action previously existing is not to be deemed taken away by a new law unless done in express terms or by an implication which seems unavoidable; it is not claimed that the express terms of the new law takes away any previously existing right of action from a workman, except those subsisting between himself and his employer and arising out of the relation of such employment.

The express language of Section 25 limits the waiver therein referred to, to rights of action against the employer; the first sentence of the second paragraph of Section 29 is not so explicit; but the context, particularly the following sentence and the preceding paragraph, makes it very plain that the option referred to in the first sentence of the second paragraph, is the same option described in the first paragraph, i. e., an option to apply for an award under the act or to sue the employer in the courts.

It is finally contended that plaintiff's receipt of an award under the workmen's compensation law operated as a satisfaction of the injury complained of by her in her petition; that

the injury, having thus been satisfied, no longer survives to support an action and that it is immaterial, so far as the legal effect of a satisfaction for a tortious injury is concerned, whence or from whom the satisfaction comes. *Miller* v. *Beck,* 108 Iowa, 575.

This leads to inquiry into the nature of the compensation given under the new law; in its essential legal nature, is it the same as the damages formerly awarded, though awarded by a different tribunal, and upon different procedure; or is it something essentially different, which the law has created as a substitute, compulsory in large measure upon employer and employee alike, for the damages formerly awarded by juries in the courts of law?

As already noted, the compensation given under the new law is fixed or measured by a standard entirely different from the measure of damages in actions at law; the compensation does not profess to be a full equivalent for the injuries, as the damages heretofore given in such cases were designed to be; under the old system, each case stood by itself, so far as the *quantum* of damages was concerned; under the new system, compensation is fixed in advance for all cases by classes, similar to the methods prescribed in policies of accident insurance. The new law in its terms preserves the distinction between compensation under it and damages, Sections 29, 45; and Section 45 shows a consciousness on the part of the Legislature that compensation was to be regarded as radically different from damages, both in the elements of which it is made up and in the reason for which it is awarded.

The terminology of the new law has no relation to a damage claim; it rather reads like the regulations of an accident insurance company.

Section 25 shows that compensation is not awarded upon any theory of satisfaction for legal injury suffered; for compensation, by the terms of Section 25, is to be given without distinction (a) to a workman injured by the employer's negligence, as we have heretofore understood the term; (b) to a workman injured by no fault or carelessness of the employer, such as avoid-

able accident, etc.; and (c) to a workman injured solely by his own fault and carelessness; the presence of this last class of beneficiaries sufficiently shows that the compensation is not based upon any possible theory of satisfaction for a tort.

The whole system is a system of compulsory state industrial insurance, a system of pensions for disabilities received in the field of industrial employment. The injured workman is the beneficiary, employers must furnish the funds out of which compensation is paid; as we have seen, this compensation can not be considered a satisfaction of a legal injury suffered upon any *ex delicto* theory. Whether the obligation under which the employer rests to pay the compensation, either directly as an award or indirectly as premium is an obligation *ex contractu, quasi* contract, or statutory, is not material to the present inquiry.

As the court regards it, the essential nature of the right of the employee and of the obligation of the employer is the same, whether the employer pays his premium to the state industrial commission under the first paragraph of Section 22, whether the employer elects to pay compensation directly to his employees under the second paragraph of Section 22, or whether the employer is obliged to pay the award made by the state industrial commission under Section 27, as in the case at bar. Neither is it regarded as material that defendant protected itself from liability for injury to its own employees, by contribution to the state fund.

Demurrer to second defense of amended answer sustained.