E. E. MIDDAUGH, Appellant, v. DES MOINES ICE & COLD
STORAGE COMPANY, Appellee.

RELEASE: Double Recovery for Same Injury. One who demands
1   of one wrongdoer full compensation for an injury, and, on a
nonfraudulent compromise. receives, in full satisfaction, a sum
less than that sued for, may not thereafter maintain another
action against a third party for the same injury, even though
the different defendants are not joint tort-feasors.

MASTER AND SERVANT: Proceeding Against. The common-law
2   rule that a settlement with one joint tort-feasor bars an action
against all other tort-feasors has been modified by Section
2477-m6. Code Supp., 1913.

EVIDENCE: Overthrowing Unequivocal Release. One who exe-
3   cutes an unconditional release of all claims for damages grow-

ing out of an injury, has the burden, in an action against a third party on account of the same injury, to show that such release was not a satisfaction of all claims growing out of said injury.

*Appeal from Polk District Court.*—C. A. DUDLEY, Judge.

NOVEMBER 16, 1918.

ACTION at law to recover damages for personal injury. There was a directed verdict and judgment for the defendant, and plaintiff appeals.—*Affirmed.*

*John McLennan* and *Herman F. Zeuch,* for appellant.

*Read & Read,* for appellee.

WEAVER, J.—In August, 1916, the plaintiff was in the employ of the Chicago, Rock Island & Pacific Railway Company, as lineman, at and near the city of Des Moines.

1. RELEASE: double recovery for same injury.
On the day in question, with two other employes of the railroad company, he was riding on a motor car, or speeder, moving westward on the main track of said railway through East Des Moines. Approaching the crossing of East Sixth Street, plaintiff and his companions saw the company's watchman at that point give the signal for stopping the movement of street traffic and clearing the crossing to allow the passage of the car, and, assuming that it was safe to do so, they continued their course. At the same time, an employe of the defendant ice company, coming from the north, driving a heavy ice truck, and in alleged neglect of the watchman's warning, drove upon the cross-ing, in time to collide with the motor car. In this collision the plaintiff received very severe injury, necessitating the amputation of a leg, crippling his arm, and inflicting other wounds and bruises. The railway company had, before that time, elected to accept and observe the provisions of the Iowa Workmen's Compensation Act; but, as we under-

stand the record, plaintiff never filed any claim with the Industrial Commission for compensation on account of the injuries so received. In December, 1916, plaintiff, by counsel employed for that purpose, brought suit against the Rock Island Company at St. Paul, Minnesota, for the recovery of damages on account of his injury. As grounds for such claim, the petition stated the facts hereinbefore mentioned, and alleged that the plaintiff's injuries were caused by the negligence of the company's watchman at the crossing, also by the negligence of other employes in leaving the crossing obscured and obstructed by freight cars standing there, and by the company's employment for the service as watchman or flagman at that point of a man who was incompetent and unfit for the discharge of such duty. With action thus pending, and before it was reached for trial, the parties reached a settlement, by which the railroad company undertook to pay and did pay to plaintiff the sum of $3,250; and plaintiff dismissed the suit, and executed and delivered to the company a receipt and voucher for the money so paid, as follows:

"(Copy.)
"Jacob M. Dickinson, Receiver.
"The Chicago, Rock Island & Pacific Railway Company.
"File No. M-1840, Iowa Division.
"General Claim Agent's No. 16-8913.
"General Release.
"Whereas, I, E. E. Middaugh, of 814 East 17th Street, Des Moines, of the county of Polk, state of Iowa, was injured, at or near Des Moines, Iowa, on or about the 19th day of August, 1916, on a line of railway owned or leased by The Chicago, Rock Island & Pacific Railway Company, and now operated by Jacob M. Dickinson as receiver of said company's railroad and property, while a lineman, under circumstances which I claim render such receiver or

company liable in damages, although such liability is denied by him and it, and the undersigned, being desirous to compromise, adjust and settle the entire matter: Now, therefore, for the sole and only consideration of the sum of three thousand, two hundred fifty and no/100 dollars ($3,250.00) to me this day paid by said receiver, in behalf of himself as such receiver, and of said company, and other companies whose lines are owned or leased by it, I do hereby compromise said claim and do release and forever discharge the said receiver and said The Chicago, Rock Island & Pacific Railway Company, and all companies whose lines are leased by it, and their respective agents and employes, from any and all liability for all claims for all injuries, including those that may hereafter develop, as well as those now apparent, and also do release and discharge them of all suits, actions, causes of action and claims for injuries and damages, which I have or might have arising out of the injuries above referred to, either to my person or property, and do hereby acknowledge full satisfaction of all such liability and causes of action.

"In making this settlement I rely solely on my own judgment and information, and do not rely on any statements or representations as to the facts of the accident or of the character and extent of my injuries, which may have been made to me by said receiver or by any of said railway companies, or by any of their officers, agents, employes or physicians, respectively.

"It is expressly understood and agreed that this settlement carries with it no promise whatever of continued or future employment.

"It is further expressly understood and agreed that this release shall be deemed to be and shall be a complete bar to any action which might otherwise be brought, either at law, or under any state or Federal Workmen's Compensation Act, Employers' Liability Act, labor law, or any other

statute, for the recovery of compensation or damages on account of said injuries (or of resulting death, if this be executed by an administrator or administratrix of the estate of said person), for the benefit of any person whomsoever or estate whatsoever.

"I further represent and covenant that at the time of receiving said payment and signing and sealing this release I am of lawful age and legally competent to execute it, and that before signing and sealing it I have fully informed myself of its contents and executed it with full knowledge thereof.

"Read This Release.

"I also dismiss suit pending in the district court of Ramsey County, Minnesota, in the above cause, and I agree to pay the costs of said action.

"I have read and understand this release.

"Given under my hand and seal this 14th day of February, A. D. 1917.

"In presence of Leo J. Cramer, C. W. Lacy.

"E. E. Middaugh, Des Moines, Iowa.

"Paid by draft No. 6068 drawn by C. W. Lacy, Claim Agent, Des Moines, Iowa."

Within a few days after dismissing the action against the railway company at St. Paul, plaintiff began this action at Des Moines against the defendant Des Moines Ice & Cold Storage Company to recover damages for the injuries hereinbefore mentioned, alleging that they were caused by the negligence of the company's employe who drove the ice truck which collided with the motor car. To this claim the defendant made answer, admitting the collision between the motor and the ice truck driven by its employe, but denying the charges of negligence. As a second count of its answer, defendant further pleaded the bringing of the suit by plaintiff at St. Paul, the dismissal thereof, the payment to the plaintiff by the company, or by its receiver, of a large

sum of money, and the release of said company, shown by the voucher above quoted. It is further alleged that the money so received by the plaintiff is still retained by him, and that, for the reasons stated, he is now barred and estopped to maintain this action. Answering certain interrogatories attached to the answer, the plaintiff, in reply, denies that he received any money from the railway company or from its receiver "in settlement of said case so commenced by him" in Minnesota. He admits, however, the execution of the release above quoted, but says the sum so paid to him was in payment of the amount agreed upon as between himself and the railway company, as being due to him under the provisions of the Iowa Workmen's Compensation Act, and that no other consideration was paid to or received by him.

Trial was had to a jury, and at the close of the evidence, the court sustained the defendant's motion for a directed verdict; and from the judgment entered thereon, plaintiff appeals.

The theory of the defense and the ground upon which the court directed a verdict may be stated in two propositions:

(1) That, if the defendant and the railway company are to be considered joint tort-feasors, a settlement and satisfaction as against the railway company operates, as a matter of law, to discharge the Ice & Cold Storage Company: in other words, that a release of one joint tort-feasor is a release of the other, also.

(2) That, even if not joint tort-feasors, the acceptance of full satisfaction for a consideration paid by one is, in law, a satisfaction of which the other may, in law, claim the benefit: in other words, that plaintiff cannot lawfully demand or claim more than one satisfaction for the injury he has suffered, and, if he has once received it, even though it be from an entire stranger or third person in no manner

chargeable with liability for his injury, the discharge is complete.

As statements of common law, both of these propositions have been approved and applied by this court. *Ryan v. Becker*, 136 Iowa 273; *Snyder v. Mutual Tel. Co.*, 135 Iowa 215; *Turner v. Hitchcock*, 20 Iowa 310; *Miller v. Beck*, 108 Iowa 575.

If we understand the appellant's position, he does not deny the soundness of these general statements, but contends that, where a defendant in an action of this kind pleads and relies upon a release by the plaintiff, given to an alleged joint tort-feasor, the transaction is open to explanation, and that parol evidence is admissible to show that the defendant and the third person who had been released are not joint tort-feasors, and that, in giving such release, no compensation was, in fact, received or intended for the plaintiff's injuries.

That such limitation upon the rules above stated does exist, is to be admitted. *Ryan v. Becker,* 136 Iowa 273. It is also to be admitted that the first of said rules is also,

2. MASTER AND SERVANT: proceeding against. to a degree, limited by the Workmen's Compensation Act, which provides (Section 2477-m6, Code Supplement, 1913) as follows:

"Sec. 2477-m6. Where an employe acting under the provisions of this act receives an injury for which compensation is payable under this act and which injury was caused under circumstances creating a legal liability in some person other than the employer, to pay damages in respect thereof: (a) The employe or beneficiary may take proceedings both against that person to recover damages and against the employer for compensation, but the amount of compensation to which he is entitled under this act shall be reduced by the amount of damages recovered. (b) If the employe or beneficiary in such case recovers compensation

under this act, the employer by whom the compensation was paid or the party who has been called upon to pay the compensation, shall be entitled from the person so liable to pay damages as aforesaid, and shall be subrogated to the rights of the employe to recover therefor."

To get the bearing and effect of these propositions of law upon the issues in this case requires a review of the evidence. It may be conceded that the evidence is such as would justify a verdict that the driver of appellee's truck was negligent, and that thereby the plaintiff was injured. There was also evidence which tended to show negligence on the part of the railroad company, or its employes; and, if the affirmative defense offered by the appellee is not held to be sufficient as a matter of law, appellant was entitled to go to the jury.

Of the transaction by which appellant's suit against the railway company was dismissed and the claim against it released, the testimony is somewhat scant and indefinite. It shows, however, to a reasonable certainty, that, before the case was brought to a trial, the parties entered into negotiations for a settlement. In this parley the railway company seems to have manifested a willingness, or at least a readiness, to pay the plaintiff some sort of compensation or damages, and the chief subject of debate or difference between them was the amount to be paid. In these conversations the company was represented by C. W. Lacy, its claim agent; while the plaintiff was present in person, talking for himself, aided, to some extent, by a friend, or attorney, who accompanied him. The pertinence of the testimony given by these parties will be better understood when we say that, in the action brought against the railway company, plaintiff's petition or complaint alleged that, when injured, he was engaged in interstate commerce in the service of the company; that such injury was caused by the negligence of the company and its employes; that

said injuries were of a very serious, painful, and permanent character, for all which he asked damages in the sum of $40,000.   Concerning the settlement made, Lacy testified as follows:

"I know such a suit was instituted by Mr. Middaugh. Those matters come to my attention as claim agent.  I get copies of the pleadings and papers in such suits, as I work in conjunction with the legal department of the Rock Island.   In that suit, as far as I know, Mr. Middaugh sought to recover damages from the Rock Island Railroad, and the receiver thereof, on account of injuries received by him on the 19th day of August, 1916, at the intersection of East Sixth Street and the Rock Island tracks in the city of Des Moines.   Subsequent to the commencement of this suit, I had some conversations with Mr. Middaugh at my office—— twice.   I remember twice before I had notice of the suit. The substance of that conversation was concerning the accident; it was in connection with the accident and the injuries received.   Quite a time after suit had been commenced, we made a settlement with Mr. Middaugh.   Mr. Middaugh was paid by the receiver of the Rock Island Railroad the sum of $3,250, as a settlement of all claims for injury.   At the time of the paying of this money, Mr. Middaugh executed a release and signed a dismissal for the suit pending, which was done simultaneously with the payment of the money."

On cross-examination, he further testified (omitting objections by counsel and rulings thereon) :

"Q.   Now, at the time of making this final release, is it a fact that this was a settlement with the plaintiff under the terms of the Iowa Compensation Act?   A. Well, it covers more than the Compensation Act, because there was a suit filed, and it covers that, too.   Q. How much of this was compensation?   A. Proportionately, the way I had arrived at it, I had figured with Mr. Middaugh, at one time,

that he was entitled to about $2,500 compensation,—possibly a little more, possibly a little less. At the time of the settlement, it was distinctly understood by all of us that the suit in Minnesota was also to be taken in consideration, and that was included in it. Q. That was in your direct conversation with Mr. Middaugh? A. Yes, sir; and I also explained to him the situation, that, the suit being filed, it would be necessary to have a dismissal of that suit, in addition to that. Q. Now, you knew, as agent for the receiver of the Rock Island Railway Company, that he had lost his leg? A. Yes, sir. ,Q. Dr. Post is your doctor? A. Yes, sir. Q. And you knew from some source that he had lost his hand? A. No, I didn't know that. Q. What injuries or loss to him physically did you consider? A. What injuries? Q. Yes, sir. A. An injury to one hand or arm and the loss of a leg. Q. Well, you understood, I suppose, Mr. Lacy, that the injury was total to his hand? A. I did not, and do not understand it now. Q. Did you consider it partial,—figure it on that basis? * * Q. You figured a total loss of the leg? A. I did,—yes. Q. Do you remember how much you allowed him on that, or how much was agreed to? A. The Compensation Act provides for a certain payment for the loss of a leg, a certain number of weeks. As I remember it, it was around $1,700 or $1,750. Q. And the loss of an arm was to balance up the $2,550? A. The injury to the arm. Q. In considering that, you understand if it is a partial loss he is entitled to recover a certain amount, and a total, a certain amount? A. Yes, sir; that is my understanding. Q. Did you figure it as total or partial? A. I figured it as partial. Q. Of an arm, or hand and arm together? A. Yes, that was my thought. Q. Was it your understanding, Mr. Lacy, at this time, that he was to receive $3,250 in full under the Iowa Compensation Act for his injury as an employe of the Rock Island Railway? A. It was my understanding that $3,250 to Mr. Middaugh for any

sum of money owing to him by the Rock Island Railway for any injury under any act, and especially in view of the fact that he had alleged interstate commerce."

Redirect Examination.—"I was advised of the claim of Mr. Middaugh, as set forth in his petition filed in his suit at St. Paul, previous to the time I made settlement. As I understood the bill of complaint, he was claiming the right under the Federal Employees' Liability Act. Yes, in the filing of the suit he would do that, and did that. In fact, Mr. Middaugh felt that the Compensation Act, at that time,—at the time I talked to him,—would not apply, and did not pay a sufficient sum of money. There seemed to be a difference of opinion relative to that."

Re-cross-examination by Mr. McLennan.—"Q. Did you tell Mr. Middaugh this, or this in substance, Mr. Lacy, that all he could recover was compensation under the Iowa Compensation Act? A. I told him it was our judgment that the case come under the Iowa Act."

In rebuttal, the plaintiff testified:

"Q. You have heard the testimony of Mr. Lacy, claim agent of the Rock Island Railway, as to the fact of you being paid compensation for these injuries that you have testified about in your chief examination. Will you tell this jury what the conversation was, and what you were to receive for that, and about when this was, and what was said? A. Mr. Lacy told me, 'We will pay you compensation only, as the Rock Island carried the compensation, and we pay you for the loss of a leg or the loss of a hand.' Q. And in what amount, if any? A. Thirty-two hundred and fifty-two dollars compensation. He says, 'That is all we could give you, and we are not responsible for your getting hurt.' Q. State whether or not you received any sum of money or thing of value for the dismissal of this case at St. Paul? A. I did not. * * * Not a cent did I receive. I had two conversations with Mr. Lacy.

Q. State whether or not they referred to this settlement on this compensation law. A: Mr. Lacy told me that this is all he could give me, compensation. Q. Well, now, could you tell the date upon which these conversations were had with Mr. Lacy, if you know about when they were? Was one of these conversations had on the date of the actual settlemen? A. One of them was. Q. And you signed up and got this money? A. That was the 14th day of February, if I am not mistaken, of the year 1917. The prior conversation I had with Mr. Lacy was three or four weeks before that, —some time in January, 1917. I could not just say the date. Q. Your understanding with Mr. Lacy was that you were only to receive compensation under the Iowa Compensation Act? The Court: State what was said. Q. Yes, state what was said. A. He said—Mr. Lacy told me—that the Rock Island was carrying this compensation under the Iowa state law, and I could get that, and all I could get and all that he would give me would be compensation for the loss of a leg and the loss of a hand. 'That is all we can give you.' Q. And you accepted that? A. I accepted that, and never a cent from the case at St. Paul. Q. This conversation was had with Mr. Lacy prior to the time of signing this agreement, and before the money was paid you? A. That was my understanding from him. Q. You did receive the $3,250? A. Under the compensation, yes, sir."

Cross-examination.—"Q. You were claiming at all times to Mr. Lacy, and everyone else in connection with the Rock Island that you talked to about this matter, that you were engaged in interstate business, and you claimed to recover under the Federal Employees' Liability Act, didn't you? A. I was told that I was under that. Q. You made that claim, didn't you? A. After they told me. Q. You are making that claim; you claimed you had a right to recover under the Federal Act, did you? A. I thought I could, under that."

Redirect Examination.—"Q. The lawyers at St. Paul told you that, didn't they? A. Yes, sir."

The testimony of plaintiff is corroborated, in part at least, by that of one other witness.

Were the decision of this case to turn solely upon the question whether the appellee and the railway company were, in fact, joint tort-feasors with respect to plaintiff's injuries, it may be conceded that the issue was one for the jury, and not of law for the court. The more troublesome inquiry arises when we consider whether it does or does not conclusively appear that plaintiff demanded and received from the railway company full compensation for the injuries of which he complains. When we say "full compensation," we do not use the words in the sense of complete or adequate compensation, nor such compensation as he might possibly have been entitled to recover, had the law suit been prosecuted to verdict and judgment. It was the right of the plaintiff to make peace with his adversary on such terms as to him seemed prudent and wise; and if they came to an agreement upon the amount which would satisfy the plaintiff's demand for the loss and injury sustained by him, and he accepted payment, and executed a release on that basis, the consideration so demanded and received was, in a legal sense, full payment, and he cannot recover another or further payment from any other person for the same wrong. As said by the Supreme Court of the United States, in *Lovejoy v. Murray*, 3 Wallace (U. S.) 1:

"When the plaintiff has accepted satisfaction in full for the injury done him, from whatever source it may come, he is so far affected in equity and good conscience that the law will not permit him to recover again for the same damages."

Quoting the foregoing paragraph approvingly in *Miller v. Beck & Co.*, 108 Iowa 575, 578, this court said:

"In accordance with this rule, it has frequently been held that the validity and effect of a release of a cause of

action does not depend upon the validity of the cause of action, and that, if the claim is made against one, and it is satisfied, all who may be liable are discharged, whether the one released be liable or not."

Brought to this test, we are of the opinion that plaintiff's own showing is sufficient to justify the court in directing a verdict for the defendant. It is true that plaintiff, in his testimony, makes use of the statement that the money he received was solely in satisfaction of his claim under the Workmen's Compensation Act, and "not a cent" in payment or satisfaction of the claim on which the suit then had been brought; yet, when we take his testimony as a whole, in the light of the conceded facts and circumstances under which the agreement was made and the release executed, it clearly appears that he is stating his opinion or conclusion, rather than the specific facts from which the jury or the court is to draw its own conclusion. What was the nature of the action, the trial of which was to be avoided by this settlement? Most certainly, it was not to enforce any right or invoke any remedy to which the plaintiff was entitled under the Workmen's Compensation Act. It was unmistakably and concededly an action at law to recover from the railway company, under the provisions of the Federal Employer's Liability Act, all the damages plaintiff had sustained by reason of his personal injuries in the collision hereinbefore mentioned. If his allegations were in accordance with the truth, and the case had proceeded to trial, and he had recovered a judgment, the payment and satisfaction of that judgment would unquestionably be a bar to his maintenance of an action against any other person for damages on account of the same injury. Moreover, if the allegations of his complaint in that case were correct, the remedy provided by the Federal Act was exclusive, and the railway company was under no legal obligation to pay him compensation under the provisions of the Workmen's

Compensation Act. In this situation, what was the mean-
ing of a settlement and discharge of plaintiff's claim, and
a final and binding dismissal of the action in consideration
of the payment of a substantial sum of money, if it was not
a satisfaction of his demand for damages on account of his
injury? It is true that the testimony on both sides shows
that the plaintiff, on the one hand, and the claim agent, on
the other, did discuss and estimate what amount the former
would be entitled to receive if his damages were to be
reckoned according to the schedule or terms of the Compen
sation Act; and it may be further conceded that the agent
expressed the opinion that the legal liability of the com-
pany, if any, was governed by the latter act, and offered to
settle by payment of an equivalent sum or amount. The
parties were very evidently bargaining for a settlement,
each desiring to secure the best obtainable terms. Doubt-
less, the agent's experience and observation assured him
that, if the case should reach a jury, the assessment of
damages, if any, in plaintiff's favor would quite certainly
exceed the maximum allowance under the Workmen's
Compensation Act, and that, if a settlement could be had
for an amount equal to or not materially greater than such
an allowance, it would be well to make it; and this, we
think, is the utmost that can be made of the talk and dis-
cussion between the parties on this subject. Primarily, the
object and purpose of the negotiation was the settlement
of the plaintiff's claim in the pending suit, the trial of
which both were seeking to avoid; and the Compensation
Act and the estimated amount of an allowance thereunder
figured in the discussion solely as a matter of argument in
arriving at the amount of damages which the company
would be willing to pay and the plaintiff would be willing
to accept. That this is the situation appears beyond rea-
sonable doubt in the fact that, when such agreement was
reached, and as part of the transaction in which plaintiff

was paid the sum of $3,250, he personally signed a dismissal of his suit, and signed and delivered to the company a formal release and discharge of his claim,—not a mere satisfaction of right and claim under the Workmen's Compensation Act, but as a "compromise settlement and adjustment of the entire matter," and as a "release and discharge of all claims, causes of action, and claims for injuries and damages arising out of the injuries referred to," and as an acknowledgment of "full satisfaction of all such liability and causes of action."

We agree with appellant's counsel that, in this case, the rule excluding parol evidence tending to contradict, deny, or explain a written contract is not applicable; but it is,

3. EVIDENCE: overthrowing unequivocal release.

nevertheless, such an unequivocal declaration and admission that the burden is on plaintiff to show, by extrinsic evidence, that the instrument was made and was intended to be no more than a technical release of the railway company only, and not a satisfaction or discharge of all claims for damages on account of his injuries. That burden, we hold, has not been satisfied, and no fact or facts are shown to sustain a finding contrary to the terms of said written satisfaction.

The judgment below is right, and it is—*Affirmed.*

PRESTON, C. J., GAYNOR and STEVENS, JJ., concur.