FARMERS SAVINGS BANK v. R. H. ALDRICH, H. O. PETERSON, THOMAS APELAND and GEORGE NERNES, Appellants.

Equitable actions: EXAMINATION OF ACCOUNTS. An action to set aside a settlement for misappropriated funds, involving an examination of mutual accounts with several defendants, is one of equitable cognizance, and a transfer of the case to the law docket to determine the amount due from defendants to plaintiff was properly overruled.

Joint wrongdoers: RELEASE: CONSTRUCTION. In this action it appeared that plaintiff settled with certain persons, not parties hereto, but jointly interested in the misappropriation of its funds, and gave them a written release from further liability, which is set out in the opinion; and it is held that the release is unconditional and does not expressly reserve the right to look to others for further misappropriated funds, although reciting that the sum received is to apply on the misappropriated fund.

Same: RELEASE OF ONE JOINT WRONGDOER: APPLICATION OF RULE. The rule relating to the effect of a release of one joint wrongdoer upon the liability of others applies to all cases where one may look to two or more persons charged with a joint wrong, whether growing out of breach of contract or tort.

Same: INTENT OF PARTIES: PAROL EVIDENCE. The effect of a settlement with one joint wrongdoer is to be determined by the intent of the parties, and this is not dependent solely upon the language of a receipt in connection therewith, but may be shown by parol evidence. In the instant case parol evidence was admissible as the instrument relied upon as a release of other joint wrongdoers is held to be no more than a receipt.

Same: SETTLEMENT WITH AND RELEASE OF ONE WRONGDOER: EFFECT. Where there is a common liability on the part of two or more wrongdoers, and settlement is made with one on consideration of such liability and its extent, the claimant can not, by an express or implied reservation of the right to recover an additional amount from the others on account of the same liability, defeat the effect of the release given the one with whom he settles, but all are released thereby.

*Appeal from Story District Court.*—Hon. Chas. E. Al-
brook, Judge.

Monday, November 20, 1911.

This is an action to recover the funds of the bank,
alleged to have been misappropriated by defendant Aldrich,
its cashier, in conjunction with the other defendants, in
bucket shop transactions.  Judgments were rendered against
defendants in different amounts, and the defendants, other
than Aldrich, appeal from the judgments rendered against
them respectively.—*Reversed.*

*John G. Myerly, Ole O. Roe,* and *McCarthy & Luke,*
for appellants.

*Samson & Noble* and *Fitchpatrick & McCall,* for ap-
pellee Farmers' Savings Bank.

*E. H. Addison,* for appellee Aldrich.

McClain, J.—Prior to June 1, 1908, defendant
Aldrich had been the cashier of the plaintiff bank, and on
that date he retired from that office, making a settlement
which the plaintiffs now allege to have been obtained by
fraud in using false records and forged notes.  It is admit-
ted that for criminal conduct in connection with the busi-
ness of the bank Aldrich was indicted, and, on being put
on trial, pleaded guilty, and was sentenced to the peniten-
tiary, where he is still confined.  A subsequent investiga-
tion disclosed his indebtedness to the bank, in a sum exceed-
ing $10,000, for misappropriation of funds.  Judgment
was rendered against Aldrich in the lower court for sub-
stantially the entire amount of this misappropriation, and
he has not appealed.  But the plaintiffs also allege that
certain portions of the misappropriated moneys were used

by the other three defendants, respectively, in partnership transactions with Aldrich, which may be sufficiently described as bucket shop transactions, carried on through Harper & Ward, of Des Moines, who received the funds misappropriated in such transactions; and the plaintiff seeks to recover from each of said defendants, as portions of a trust fund misappropriated by Aldrich, the amounts paid to Harper & Ward in the partnership business. Said defendants deny, respectively, the partnership arrangements alleged by plaintiff, and deny any knowledge that Aldrich was carrying on bucket shop transactions in their names and for their benefit, and was using the plaintiff's money for the purpose. Defendants also rely upon a settlement with Harper & Ward as constituting a release of each of them from liability. The trial court held that the settlement with Harper & Ward did not constitute a release, and found on the issue of fact that each of the defendants authorized Aldrich to conduct the bucket shop transactions in their respective names, and rendered judgments against them, respectively, for the sums of money found to have been advanced from the funds of the bank to carry out the respective partnership arrangements.

I. A motion to transfer the case to the law docket for determination of the amount due by the defendants, respectively, to the plaintiff bank was overruled, and de-
1. EQUITABLE ACTIONS: examination of accounts.
fendants assign error on this ruling. In view of the fact that the action was brought in equity to set aside the settlement with Aldrich on the ground of fraud, that the issues raised involved an examination of mutual accounts of payments to Harper & Ward and credits to the several defendants for profits alleged to have been realized in the various transactions, and that the purpose of the entire action was to recover trust funds misappropriated by Aldrich through the connivance of the other defendants, and for their

benefit, we think the court properly refused to hold that the case was not one of equitable cognizance.

II.  After the officers of the bank had discovered the misappropriation of its funds, by their use in carrying on bucket shop transactions with Harper & Ward, negotiations were instituted by them looking to the return by Harper & Ward of the bank's funds employed in such transactions.  Harper & Ward finally suggested the payment of $2,000 by them as a settlement.  Later the president and attorney for the bank suggested that the claim might be settled for $6,000. Then, after several further meetings, Harper & Ward offered $4,000 to compromise the claim, and this offer was accepted and the money paid.  Before this offer was accepted, the representatives of the plaintiff had dropped to $5,000.  The negotiations had extended over a period of about six months, and the final settlement was in the nature of a release of Harper & Ward, so far as any further obligation to the bank was concerned.  In connection with the settlement, but not as a part of it, so far as Harper & Ward were concerned, it was stated that the intention of the officers of the bank was to proceed against the other parties.  The consummation of the settlement was by an instrument in writing, as follows:

*2. JOINT WRONG-DOERS: release: construction.*

Des Moines, Ia., Oct. 1, 1909.  This is to acknowledge receipt of the sum of four thousand dollars from the firm of Harper & Ward to apply on sums of money belonging to the undersigned bank and misappropriated by Ralph H. Aldrich, formerly cashier of said bank; said bank reserving the right to apply the said four thousand dollars as it shall choose to apply the same, except that it shall not be applied to any portion of the indebtedness of said Ralph H. Aldrich to said bank by reason of the sums so misappropriated for which the bank has been reimbursed by the sum received from the surety on the bond of said cashier to said bank.  In consideration of said four thousand dollars said bank agrees that it will not now nor at any time hereafter make any further demand upon said

Harper & Ward because of any such misappropriations, nor by reason of any business, trades or transactions between said Ralph H. Aldrich and said Harper & Ward either for himself personally or in behalf of others. The undersigned officers of said bank hereby represent that they have due and full authority to receive said funds and make this agreement on behalf of the bank. Farmers' Savings Bank of Huxley, Iowa, by O. J. Kalsem, President. Peter B. Brown, Director.

The only words in this instrument indicating that it was not to constitute a full settlement with Harper & Ward, not only for their benefit, but for the benefit of all persons liable with them for the misappropriation of the money which had come into their hands, are those indicating that the amount received was "to apply on" the claim of the money so misappropriated, instead of being in full satisfaction thereof; but the release is unconditional, and there is no express reservation of any right to look further to other persons liable for the misappropriation. We think the question is therefore squarely raised whether the release of one wrongdoer constitutes a release also of others jointly liable with him for the wrong.

Counsel for appellee contend that these appellants and Harper & Ward were not joint wrongdoers, and therefore the rule as to the effect of the release of one joint tort-feasor upon liability of others, has no application. But as we understand the rule it is not strictly limited to cases of wrongs against the person or against tangible property. It is applicable in every case where one person may look to two or more, charged with a wrong jointly, or jointly and severally, and it is applicable as well in cases of breach of contract. *Turner v. Hitchcock,* 20 Iowa, 310, 323. The plaintiff bank was asking to recover money misappropriated by its cashier, and this misappropriation consisted in paying the money to Harper & Ward. The connection of the appellants with the transaction was in pro-

3. SAME: release of one joint wrongdoer: application of rule.

curing, or assisting, or profiting by such payment. None of the money passed through their hands, and they received no money from Harper & Ward. It is true, checks for alleged profits were made out, payable to appellants, but they were delivered to Aldrich, and by his own indorsement of the names of appellants turned over to the bank, which received the money. It is a question under the record whether the use by the cashier of the names of the appellants in making such indorsements was authorized by the relations which the cashier had reason to understand existed between him and each of the appellants. It is sufficient now to say that it is perfectly clear that if the bank had any claim whatever against Harper & Ward it had a claim for the entire amount of money paid to that firm out of the bank's funds, deducting the amounts returned to the bank, whether regularly or irregularly, by means of checks or drafts, for supposed profits or money advanced by the firm to the cashier and used for the benefit of the bank. There is not the slightest doubt, therefore, that in settling with Harper & Ward the bank was attempting to settle a claim for the same money which it is now demanding from the appellants. Under these circumstances the appellants and Harper & Ward were, on plaintiff's theory, jointly and severally liable for the misappropriation of the money; that is to say, the claims against the respective appellants were also claims against Harper & Ward.

There is some question among counsel as to whether the effect of this settlement is to be determined solely by the language used in the receipt, or by the intention of the parties as disclosed by parol evidence. On 4. SAME: intent of parties: this point we easily reach the conclusion that parol evidence. the intent of the parties should govern. A receipt is not a contract, and other evidence is always admissible to show what was its purpose.

With reference to the application of the rule that the

release of one joint tort-feasor extinguishes the liability of others, the courts have always looked to see what the purpose of the parties really was, as indicated, not only by the language of the release, but also by the character of the negotiations, preserving, of course, the rule that parol evidence is not admissible to vary the terms of a written contract. The instrument above set out does not purport to be a contract, but only a receipt, and, although it states the terms upon which the settlement was made, we think that other evidence as to the intention of the parties was admissible. The entire negotiations between plaintiff and Harper & Ward related, however, to the amount which the latter should pay to be released from further liability, and an intimation on the part of the representatives of the bank that they might subsequently attempt to hold the appellants liable· would not affect the character of the transaction as constituting a complete release of Harper & Ward.

There is an irreconcilable conflict in the authorities as to what constitutes such release of the one joint tort-feasor as to bar further claims against the others. It is agreed, on the one·hand, that a simple release, without more, constitutes a complete satisfaction of the entire claim; while, on the other hand, it is well settled that the claimant may enter into a covenant with one tort-feasor, on a good consideration, not to sue him without barring his claim as to others. The rule as to the effect of, a release may at one time have been somewhat technical; but it has been observed and acted upon, not as a technical rule of the common law, but for reasons of sound policy. A claimant should not be allowed to settle with one of the persons liable to him for his entire claim, if it is valid, and then, having received all he has been able to exact from such party, proceed to speculate by litigation with others, who were no more liable than the first. On the other hand, a claimant may have good grounds for refraining from suing one of the parties liable, and

5. SAME: settlement with and release of one wrongdoer: effect.

giving to such party an assurance that he will not further be molested, and seeking his entire redress from others, who are equally liable. The exact divergence between the authorities, as we understand it, is this: Some courts hold that if the transaction is in effect a release the result is to release all, notwithstanding an attempt to reserve a right of action against others; while other courts hold that a release in form, with a reservation of the right to sue others, is in effect nothing more than a covenant not to sue the one released. The weight of authority in this country seems to be unquestionably in support of the rule that an adjustment with one wrongdoer, and his release from all further liability, discharges all the joint wrongdoers, even though there is a reserved intention, either expressed or implied, to look to the other wrongdoers for further damages or compensation. *McBride v. Scott,* 132 Mich. 176 (93 N. W. 243, 61 L. R. A. 445, 102 Am. St. Rep. 416); *Abb v. Northern Pacific R. Co.,* 28 Wash. 428 (68 Pac. 954, 58 L. R. A. 293, 92 Am. St. Rep. 864); *Ellis v. Bitzer,* 2 Ohio, 89 (15 Am. Dec. 534); *Ayer v. Ashmead,* 31 Conn. 447 (83 Am. Dec. 154); *Seither v. Philadelphia Traction Co.,* 125 Pa. 397 (17 Atl. 338, 4 L. R. A. 54, 11 Am. St. Rep. 905); *Mitchell v. Allen,* 25 Hun (N. Y.), 543; *Brogan v. Hanan,* 55 App. Div. 92 (66 N. Y. Supp. 1066); *Wallner v. Chicago Consolidated Traction Co.,* 245 Ill. 148 (91 N. E. 1053). Text-writers in general support this view. 1 Cooley, Torts (3d ed.), 235; 1 Kinkead, Torts, section 63. And see note in 1 Am. & Eng. Ann. Cas. 63. In support of the other view, see *Ellis v. Esson,* 50 Wis. 138 (6 N. W. 518, 36 Am. Rep. 830); *Musolf v. Duluth Edison Elec. Co.,* 108 Minn. 369 (122 N. W. 499, 24 L. R. A. (N. S.) 451); *Edens v. Fletcher,* 79 Kan. 139 (98 Pac. 784, 19 L. R. A. (N. S.) 618); *Gilbert v. Finch,* 173 N. Y. 455 (66 N. E. 133, 61 L. R. A. 807, 93 Am. St. Rep. 623); *Hirschfield v. Alsberg,* 47 Misc. Rep. 141 (93 N. Y. Supp. 617).

In the New York case of *Gilbert v. Finch,* just cited, the conflict in the authorities in that state and elsewhere is to some extent discussed, but the conclusion of the court is based on a New York statute, and in some other states there are statutes affecting the question. Many more cases might be cited on either side, but without profit, for in the recent cases above referred to the authorities are fully collected. In this state the first announcement on the subject is in *Turner v. Hitchcock,* 20 Iowa, 310. It is there said that a release of one joint tort-feasor constitutes a satisfaction as to all, by operation of law, and the court cites with approval the early Ohio case of *Ellis v. Bitzer, supra,* which is generally regarded as one of the early leading cases in this country on the subject. The court was divided as to the result to be reached, but not on this proposition. In *Bell v. Perry,* 43 Iowa, 368, some doubt was expressed as to the correctness of the view announced in *Ellis v. Bitzer* and *Ayer v. Ashmead,* but the case was one relating to the dismissal of a suit against one joint tort-feasor on payment of costs, and is not therefore directly in point. In *Miller v. Beck,* 108 Iowa, 575, it was intimated that if the apparent intention is not to release or discharge the debt, but to release only one of the wrongdoers from his liability, the effect is only that of a covenant not to sue, and the others remain liable, citing *Ellis v. Esson, supra;* but the case related to the recovery of damages for separate attachments, and it was not contended that the entire damages for either one covered all the damages suffered from the other, and it was held that the attaching creditors were not joint wrongdoers. In *Snyder v. Mutual Telephone Co.,* 135 Iowa, 215, it was held that where the plaintiff entered into a voluntary settlement, for a substantial consideration, with one charged as a wrongdoer, and released such wrongdoer on payment of an amount received in full of all claims against it for damages, others, charged as wrongdoers, were necessarily re-

leased, although there may have been an intention in the settlement to seek further recovery against another. It is apparent, therefore, that this court has not as yet committed itself in any pertinent case unequivocally to either line of decisions.

We now reach the conclusion, however, that where the matter in controversy with one of two or more alleged wrongdoers is as to a liability common to all of them, and the settlement is made on considerations relating to the existence of such liability and its extent, it is not competent for the claimant, by expressly or impliedly reserving the right to recover an additional amount from the others on account of the same liability, to defeat the effect of the release which he gives. This conclusion seems particularly applicable to the case now under consideration. If plaintiff's money was misappropriated by the cashier through any arrangement with appellants and for their benefit, then Harper & Ward received the entire fund thus misappropriated. It would certainly be unreasonable to hold that plaintiff, pursuing the fund into the hands of Harper & Ward, should not recover all thus misappropriated. Apparently plaintiff attempted to do so, and agreed with Harper & Ward as to the amount. Plaintiff ought not now to be allowed to contend that it got from Harper & Ward only a portion of the fund thus misappropriated, and insist on the payment of the balance by these appellants. There is no suggestion that Harper & Ward were not pecuniarily responsible, and might not have been compelled, in proper action, to respond to the extent of the entire amount misappropriated by the cashier by connivance with and for the benefit of these appellants.

As a good defense was therefore made out for the appellants, it is not necessary to consider the questions elaborately argued as to whether appellants were in fact wrongdoers, and whether all the advancements from the

bank's funds to Harper & Ward were on their several accounts.

The judgment of the trial court is therefore *reversed*.