ARLENE PEDERSEN, appellant, v. JEANETTE H. BRING, appellee.

JEANETTE H. BRING, cross-petitioner-appellee, v. GEORGE D. FREEMAN et al., cross-defendants-appellees.

No. 50658.

(Reported in 117 N.W.2d 509)

OCTOBER 16, 1962.

James & Greer, of Spencer, and Erickson, Zierke & Kuderer, of Fairmont, Minnesota, for plaintiff-appellant.

Fitzgibbons & Fitzgibbons, of Estherville, for appellee Jeanette H. Bring.

Gleysteen, Nelson, Harper, Kunze & Eidsmoe, of Sioux City, for appellee George D. Freeman.

Cornwall, Cornwall & Avery, of Spencer, and Austin, Grefe & Sidney, of Des Moines, for appellees Mavis I. Nelson and Lyle V. Nelson.

THOMPSON, J.—This appeal presents but one question, the construction of an instrument denominated "Covenant Not To Sue" which the plaintiff executed and delivered to cross-defendants Mavis I. Nelson and Lyle V. Nelson. The trial court, upon an application for determination of law points, held that the covenant is in fact a full release, and so prevents the plaintiff from proceeding against the original defendant Jeanette H. Bring, and the additional cross-defendant George D. Freeman. We granted leave to appeal. Another question was also decided by the court, but it is not argued here and the validity of the ruling was in fact admitted by counsel for plaintiff on oral argument. Accordingly we give it no attention.

We have before us only the pleadings in the case. Although the plaintiff in argument contends that certain depositions should have been considered by the trial court, the record shows that

these were not called to the attention of the court. Whether in any event the court must consider depositions in ruling on an application for law points under rule 105 we do not determine. The depositions were not in fact brought to the attention of the court; and in view of our holding on the proper interpretation of the instrument in question we do not find it necessary to decide the question. If material, they may be considered upon further proceedings in the case.

The record shows that plaintiff's action is one for damages claimed to have been sustained in an automobile collision on September 27, 1957. It appears from the pleadings that plaintiff was on that date traveling east on highway No. 9. The defendant Bring was proceeding west on the same road. She attempted to pass the cross-defendant Freeman when, the petition alleges, she was in a no-passing zone. The petition further alleges that because of this plaintiff was compelled to apply her brakes suddenly and with great force in order to avoid a collision with defendant's oncoming vehicle; as a result of which her car was struck from the rear by an automobile owned by the cross-defendant Lyle Nelson and driven at the time by the cross-defendant Mavis I. Nelson.

After the Nelsons and Freeman had been brought into the case as cross-defendants, the defendant Bring and the cross-defendants Nelson pleaded the execution of an instrument, known in the record as Exhibit A, executed in favor of the Nelsons, called a "Covenant Not To Sue" but which the defendant Bring contends is a complete release and so releases all other parties against whom claim might be made; and which the Nelsons claim prevents any action against them by the plaintiff and that plaintiff, by its terms, is bound to hold them harmless from any recovery by the defendant Bring on her cross-petition. These contentions of the Nelsons were upheld by the court in its ruling, but as we have pointed out above the question is not argued here and we give it no further attention. The plaintiff, in a reply, alleged mutual mistake in the execution of the instrument and asked it be set aside. This question was not decided by the trial court but was specifically reserved for the trial.

I. So we have but the one question of the real meaning of the covenant, Exhibit A. We set it out herewith:

"EXHIBIT 'A'

"COVENANT NOT TO SUE

"Arlene Pedersen of Armstrong in the County of Emmet and State of Iowa for my heirs, executors and administrators, in consideration of the sum of Seventy-nine and 12/100----Dollars to be paid by Lyle V. Nelson the receipt of which is hereby acknowledged, do by this instrument covenant with said Lyle & Mavis Nelson to forever refrain from instituting, pressing or in any way aiding any claim, demand, action or causes of action, for damages, cost, loss of service, expenses or compensation for, on account of, or in any way growing out of, or hereafter to grow out of an accident which happened to Mavis Nelson on or about the 27th day of Sept., 1957, at or near 2 Mi. East of Gruver, Iowa on highway #9 whereby ............ and for the above consideration I hereby agree to hold the said Lyle & Mavis Nelson harmless from any damages to myself resulting or to result from said accident.

"WITNESS - - - - - - - hand and seal this 2nd day of Oct. at Armstrong, Iowa A.D. 1957.

"/s/ Mrs. Arlene Pedersen"

We need consider only plaintiff's contention that the instrument in question is ambiguous and so the question of the intent of the parties in executing it—whether it was meant to be a full release or is only what it is labeled, a covenant not to sue—should be determined by evidence. While a covenant not to sue is an artificial means of evading the general rule that a full release of one against whom a claim is made also releases others against whom the same claim might be lodged, it is established in Iowa that it is valid. In Dungy v. Benda, 251 Iowa 627, 638, 102 N.W.2d 170, 177, we said: "The distinction between a full release and a covenant not to sue is well established in Iowa. While it may appear technical, it is firmly settled in our law, is well understood by the legal profession and we are not disposed to change the prevailing rule." The rule applied in Dungy v. Benda, supra, is in its application often harsh, and the device of

the covenant not to sue, as well as that of the modern "loan receipt" have been adopted as a means of permitting settlement with one alleged wrongdoer without releasing others. Bolton v. Ziegler, U. S. D. C., N. D. of Iowa, 111 F. Supp. 516, 527. Our problem here is to determine whether the instrument before us is so clearly a full release of the Nelsons that it will admit of no other interpretation. If so, the ruling of the trial court was correct. If not, the intent may be determined, as the plaintiff contends, by evidence as to the real intent of the parties; that is to say, whether plaintiff meant to give the Nelsons a full release or merely to agree not to sue them or assert any claim against them.

It must be admitted the instrument before us is troublesome. A plain and simple covenant not to sue, such as was used in Renner v. Model Laundry, C. & D. Co., 191 Iowa 1288, 1304, 1305, 184 N.W. 611, 612, would have prevented the difficulties which have arisen. But we must take the instrument as it was executed.

██ ██ II. The intent of the parties must be determined from what they did; and if the instrument is clearly one thing or the other, a covenant not to sue, or a full release of the Nelsons, there is no room for construction. It is true the parol-evidence rule does not apply in favor of one who is not a party to the instrument from which he seeks to claim an advantage. Dungy v. Benda, supra, loc. cit. 251 Iowa 633, 102 N.W.2d 174, Middaugh v. Des Moines Ice & Cold Storage Co., 184 Iowa 969, 984, 169 N.W. 395, 400. But the intent may be so clearly shown by the instrument that there is no room for construction. Dungy v. Benda, supra.

The question must be determined by a study of the instrument Exhibit A. The defendant Bring relies greatly upon Atlantic Coast Line Railroad Co. v. Boone, Fla., 85 So.2d 834, 57 A. L. R.2d 1186. There an instrument identical for all practical purposes with the one before us here was held to be in fact a full release which released all other alleged joint tort-feasors. The plaintiff makes some effort to distinguish the two instruments, because of certain differences or omissions in filling in the blanks provided in the printed form; but we do not find them material. We consider the two instruments identical, except of course for

the differences in dates and names and description of the accidents.

But this does not mean that we arrive at the same conclusion as did the Florida Supreme Court. We respect the opinions of courts of other jurisdictions, and give them weight so far as we find them well reasoned and persuasive. But we are not bound by them. It is evident that the Florida court considered the release by its terms as a full release of all parties against whom the claim might be asserted. The court said: "The covenant before us was comprehensive and all-inclusive. It was not a covenant merely to refrain from suing Bartulevy. It was a covenant to refrain from suing *everybody* connected with the particular injury." Loc. cit. 85 So.2d 842, 57 A. L. R.2d 1196.

It is at this point that we part company with the Florida court. We do not find it so clear that the plaintiff here covenanted not to sue all parties who might be thought liable in damages for her injuries. The covenant is made with the Nelsons; then follows the agreement to "forever refrain from instituting, pressing or in any way aiding any claim, demand, action or causes of action, for damages, cost, loss of service, expenses or compensation for, on account of, or in any way growing out of, or hereafter to grow out of an accident * * *." This language, standing alone, is susceptible of the interpretation put upon it by the Florida court. But an instrument must be construed as an entirety; it must be "taken by its four corners." We do not find it possible to say, as a matter of law and the only possible and reasonable construction of the instrument, that it was the intent of the plaintiff to agree with the Nelsons that she would not only refrain from suing them, but all others who might be thought liable. The Florida case found a full release instead of a covenant not to sue primarily because it enlarged the covenant which we think was intended as an agreement not to press any claim against the one named tort-feasor, into a covenant not to sue all possible tort-feasors. We think a fairer construction of the language of the instrument in the instant case is that the covenant was with the Nelsons only. The covenant is by its terms made with them; and while it might well have been more clearly expressed, it seems logical that the things actually agreed to as

294

set out were intended to be for their benefit only. There seems no reason why the plaintiff should agree, or the Nelsons be interested in, releasing all other possible defendants.

The covenant so far as it purports in specific terms to release all others who might be claimed to be liable is at least ambiguous, and calls for clarification. Ambiguity is present when a genuine doubt appears as to the meaning of a contract. Hubbard v. Marsh, 241 Iowa 163, 165, 40 N.W.2d 488, 490; or if it is open to various interpretations, Anderson v. Telsrow, 237 Iowa 568, 575, 21 N.W.2d 781, 785. Such is the situation here.

III. Nor do we find any clear expression on the face of the instrument to make a full release of all claims against the Nelsons, such as appeared from the instrument in question in Dungy v. Benda, supra. If it is considered as agreeing not to sue or press any demands against the Nelsons only, which we have said above is a quite possible interpretation, it is on its face a covenant not to sue and no more. An instrument apparently identical in all material words was held by the Massachusetts Supreme Court to be a covenant not to sue, in Johnson v. Von Scholley, 218 Mass. 454, 457, 106 N.E. 17, where the court said: "But the covenant not to sue put in evidence by the defendants did not operate as a discharge of the plaintiff's cause of action; it only barred the remedy against the company [the covenantee] * * *." The quoted language was set out in the later Massachusetts case of Karcher v. Burbank, 303 Mass. 303, 306, 21 N.E.2d 542, 544, 124 A. L. R. 1292, with approval. In the later case the words of the instrument in question are set out with some particularity, and it is said the instrument was substantially the same as the one involved in Johnson v. Von Scholley, supra. The language is in substance that of the covenant now before us, and we agree with the holding of the Massachusetts court that it in effect makes a covenant not to sue.

IV. We agree with the defendant Bring that it is immaterial whether the parties involved are joint tort-feasors; it is sufficient if a release is given to one against whom a claim was being made for the same injury. Dungy v. Benda, supra, 251 Iowa 627, 634, 102 N.W.2d 170, 174, 175. But the point is not material in the case before us, unless it shall be decided after a

further hearing that the covenant not to sue was in fact a full release of the Nelsons, which must be determined from the intent of the parties executing and receiving it.

V. The defendant further urges that an instrument may not be interpreted as a covenant not to sue unless it contains a clearly expressed intention not to discharge other parties who may be, or may be claimed to be, liable. We do not agree that this is the law. The question is discussed and the Iowa rule announced in Farmers Savings Bank v. Aldrich, 153 Iowa 144, 153, 133 N.W. 383, 388, where we held that a claimant may not fully settle with and release one wrongdoer and retain his rights against others by a reservation in the release. It is apparent that a reservation will not change a full release into a covenant not to sue, although it might have some weight as evidence of intention if the language of the release were ambiguous. On the other hand, failure to include a reservation will not make a full release out of a covenant not to sue. We agree with the logic expressed in Joyce v. Massachusetts Real Estate Co., 173 Minn. 310, 313, 217 N.W. 337, 338: "As a covenant not to sue does not affect or impair the right to sue other joint tort-feasors, a reservation of that right in the covenant is unnecessary." To the same effect is Gronquist v. Olson, 242 Minn. 119, 64 N.W.2d 159, 184.

We conclude that the instrument Exhibit A is so far tainted with ambiguity that its meaning may not be interpreted as a matter of law, but the real intent of the parties may be shown by parol evidence as against or in favor of those not parties to it who claim some advantage under it. For this reason the ruling and order of the trial court holding the instrument to be a full release which releases others claimed to be liable was in error. The case is remanded for further proceedings in accordance with this opinion.—Reversed and remanded.

All JUSTICES concur.