LaDENA JOHNSON and ANDREW B. JOHNSON, appellants, v. PHILLIP CHARLES HARNISCH, et al., appellees.

No. 52208.

December 13, 1966.

O'Donohoe & O'Connor, of New Hampton, for appellants.

Donohue, Wilkins & Donohue, of New Hampton, for appellees.

Becker, J.—During trial of a personal injury action plaintiffs settled with two of three alleged joint tort-feasors. We must again determine the effect of the settlement contract. The facts of the case and of the settlement follow.

Plaintiffs allege that on May 11, 1962, LaDena Johnson was operating her car in an easterly direction on Highway No. 18 near Fredericksburg, Iowa; defendant Virgil Bahlmann was also driving easterly at the same time and place, the Bahlmann car was followed by a car owned by defendant Kathleen Harnisch and driven by defendant Phillip Harnisch; when plaintiff LaDena Johnson was preparing to make a left turn into her farm driveway Virgil Bahlmann allegedly operated his car in such a negligent manner as to be unable to stop behind plaintiff and was forced to drive on the shoulder and into the ditch; the Harnisch car then struck the rear of plaintiff's car. The petition is divided into six divisions in which the owners and operators of each car are sued separately and in the fifth and sixth divisions, jointly. Plaintiff Andrew B. Johnson sues as husband for loss of aid, assistance, companionship, comfort and society of his spouse. Appropriate specifications of negligence were pleaded in all counts.

The case went to trial December 6, 1965, against both sets of defendants. During the noon recess the first day of trial plaintiffs and the Harnisches executed the following instrument:

"Agreement Not To Proceed  For and in consideration of the sum of $19,000, to be paid by the defendants Phillip Charles Harnisch and Kathleen Cleo Harnisch, these plaintiffs agree not to proceed with their cause of action against these said defendants. The plaintiffs shall file dismissal without prejudice immediately upon the execution of this agreement, and do hereby reserve to themselves all rights to proceed with the cause of action against the defendant Virgil Fred Bahlmann.

"The plaintiffs further agree to indemnify and hold harmless these said defendants, Phillip Charles Harnisch and Kathleen Cleo Harnisch and their insurance-carrier, the General Casualty Company of Wisconsin, from any and all subsequent actions for contribution or indemnity that might be instituted by or on behalf of the defendant Virgil Fred Bahlmann or any other person or corporation in concert with the defendant Virgil Fred Bahlmann; it being understood and agreed that the above payment is in partial payment of the plaintiffs' damages as a result of an automobile accident on May 11, 1962; that this instrument and the dismissal without prejudice contracted for herein are not intended by the parties to this agreement to be a release of the defendants Phillip Charles Harnisch and Kathleen Cleo Harnisch, and that the plaintiffs intend to pursue their respective causes of action against Virgil Fred Bahlmann, and that the defendants Phillip Charles Harnisch and Kathleen Cleo Harnisch may be liable for contribution as a result thereof.

"These plaintiffs further agree, upon receipt of written notice of any action for contribution or indemnity arising out of the above-entitled cause of action by or on behalf of Virgil Fred Bahlmann, his insurance-carrier, or any other person in concert with him to defend said matter at their expense, and pay any law judgments or decrees that may be entered.

"Signed at New Hampton, Iowa, on this 6th day of December, 1965."

Plaintiffs promptly filed a dismissal without prejudice of

their cause of action against the Harnisches. Thereupon defendant Bahlmann was allowed to amend his answer to plead the foregoing actions of plaintiffs as a complete bar to any action against him. The entire matter was continued and the jury dismissed in order that the court could assess this new development in relation to the claim against Bahlmann. Judgment dismissing plaintiffs' action against Bahlmann was based on a motion to determine legal questions; Iowa Rules of Civil Procedure, No. 105.

The trial court noted that both sides claimed that the Agreement Not to Proceed was unambiguous; but the interpretations of the unambiguous meaning were, of course, diametrically opposed. After a careful review of the cases the court held that as a matter of Iowa law the instrument was unambiguous and that it constituted a complete defense to plaintiffs' action against Bahlmann. The court felt that there are three types of settlement instruments available in Iowa, a full release, a release with reservations and a covenant not to sue, Bolton v. Ziegler, 111 F. Supp. 516. After deciding that this was not a covenant not to sue, the court said:

"Next, the question arises as to whether or not this Court should establish a new category of instruments, applying to joint tort-feasors and settlement of their actions. It is true the covenant not to sue has been allowed as an artificial method of getting around release of all joint tort-feasors; however, this artificiality has been accepted for many years by the Iowa Court. It has been this Court's understanding that any broadening of an area such as this is more properly left to courts of higher jurisdiction. While this Court appreciates the request of the plaintiffs to enlarge this area of law, it must respectfully decline."

Defendant Bahlmann argues that since the two-year statute of limitations had run before plaintiffs settled with the Harnisches and since the instrument contained an indemnity agreement by plaintiffs in favor of the Harnisches, the instrument accomplished a full and complete settlement which brings it under the rule that the release of one joint tort-feasor releases all.

Plaintiffs' position is that the instrument is not a release but is more analogous to a covenant not to sue. Plaintiffs recognize that the fact that the statute of limitations had run would make the covenant not to sue language inappropriate but state that the language of the agreement not to proceed accomplishes the same result. Plaintiff then argues strenuously that the real test is whether or not the settlement has been received as, and intended to be, a full *satisfaction* for the injury received.

■ I. Our latest case on the subject, Pedersen v. Bring, 254 Iowa 288, 293, 117 N.W.2d 509, examines a covenant not to sue which, because of the broad language used, was urged as a full release rather than a covenant not to sue. The controversy narrowed down to the following interpretation:

"The covenant is made with the Nelsons; then follows the agreement to 'forever refrain from instituting, pressing or in any way aiding any claim, demand, action or causes of action, for damages, cost, loss of service, expenses or compensation for, on account of, or in any way growing out of, or hereafter to grow out of an accident * * *.' * * * We do not find it possible to say, as a matter of law and the only possible and reasonable construction of the instrument, that it was the intent of the plaintiff to agree with the Nelsons that she would not only refrain from suing them, but all others who might be thought liable."

In determining that the instrument considered in Pedersen v. Bring, supra, was ambiguous and thus susceptible to parol evidence to determine the intent of the parties, this court reaffirmed several rules. "The intent of the parties must be determined from what they did; and if the instrument is clearly one thing or the other, a covenant not to sue, or a full release of the Nelsons, there is no room for construction. It is true the parol-evidence rule does not apply in favor of one who is not a party to the instrument from which he asks to claim an advantage. Dungy v. Benda, supra, loc. cit. 251 Iowa 633, 102 N.W.2d 174, Middaugh v. Des Moines Ice & Cold Storage Co., 184 Iowa 969, 984, 169 N.W. 395, 400. But the intent may be so clearly shown by the instrument that there is no room for construction. Dungy v. Benda, supra." (Page 292 of 254 Iowa)

We also said in Pedersen at page 295: "The question is discussed and the Iowa rule announced in Farmers Savings Bank v. Aldrich, 153 Iowa 144, 153, 133 N.W. 383, 388, where we held that a claimant may not fully settle with and release one wrongdoer and retain his rights against others by a reservation in the release. It is apparent that a reservation will not change a full release into a covenant not to sue, although it might have some weight as evidence of intention if the language of the release were ambiguous. On the other hand, failure to include a reservation will not make a full release out of a covenant not to sue. We agree with the logic expressed in Joyce v. Massachusetts Real Estate Co., 173 Minn. 310, 313, 217 N.W. 337, 338: 'As a covenant not to sue does not affect or impair the right to sue other joint tort-feasors, a reservation of that right in the covenant is unnecessary.' To the same effect is Gronquist v. Olson, 242 Minn. 119, 64 N.W.2d 159."

In Dungy v. Benda, 251 Iowa 627, 633, 102 N.W.2d 170, we considered the same problem but there the instrument of settlement was clearly termed a release, used language of release, and was construed by this court to be a release. "There seems no doubt that the instrument executed and delivered to the railroad company was a full release. It is quite evidently not a mere covenant not to sue, and there are no reservations."

Having determined the character of the instrument in Dungy we said further (page 638): "The distinction between a full release and a convenant not to sue is well established in Iowa. While it may appear technical, it is firmly settled in our law, is well understood by the legal profession and we are not disposed to change the prevailing rule. There is no question here of a release with reservations, such as is discussed in Bolton v. Ziegler, supra, 111 F. Supp. 516. The release is full and categorical. It is admitted; it implies full satisfaction of the claim against the railroad company, against which the same claim was made for the same injury involved in the case now before us. Being satisfied against the railroad, it is the law that it is satisfied in full as to all others against whom it might be asserted."

Having determined in that case that full satisfaction was implied we held that the other tort-feasors were released, but we

recognized and reserved the question of "release" vis-a-vis "satisfaction" in the following words: "The plaintiff urges that there must be a difference between a 'release' and a 'satisfaction' of a claim. Whether this may be true in some cases we do not decide." Dungy v. Benda, supra, loc. cit. 635.

The instrument here before us is quite different from those found in Pedersen and Dungy. It is not necessary that we now consider in detail when extraneous evidence is admissible to show the circumstances surrounding the execution of the instrument for the purpose of interpretation. Its effects must here be determined by its own language.

Both of the foregoing cases recognize the erudite review of the Iowa law on this subject to be found in Bolton v. Ziegler, 111 F. Supp. 516. We here recognize and utilize the careful analysis of the myriad Iowa cases considered by Judge Graven before he reached a conclusion in that case. Special attention was paid to principles set forth in selected Iowa Supreme Court decisions. Before noting the Federal Court's conclusion, we will cite some Iowa pronouncements given as a basis of that opinion.

Miller v. F. Beck & Co., 108 Iowa 575, 582, 79 N.W. 344, states: "It is important that we distinguish in this connection between what the law denominates a 'release' and what is called a 'satisfaction.' * * * A satisfaction, however, by whomever made, if accepted as such, is a bar to further proceedings on the same cause of action."

Latham v. Des Moines Electric Light Co., 232 Iowa 1038, 1042, 6 N.W.2d 853, holds: "Whether a cause of action is released depends not on the amount of money received but on whether the amount received was accepted in full satisfaction of the claim."

Farmers Savings Bank v. Aldrich, 153 Iowa 144, 153, 133 N.W. 383, relied upon by defendants here is also noted in Bolton v. Ziegler, supra: " 'We now reach the conclusion, however, that, where the matter in controversy with one of two or more alleged wrongdoers is as to a liability common to all of them, and the settlement is made on considerations relating to the existence of such liability and its extent, it is not competent for the claimant, by expressly or impliedly reserving the right

to recover an additional amount from the others on account of the same liability, to defeat the effect of the release which he gives.' "

Having noted these and many other cases, the Federal Court held in Bolton v. Ziegler at pages 524, 525 of 111 F. Supp.: "It is believed that the Iowa rule in this regard is, that an injured person who receives satisfaction of his claim or cause of action against one of two claimed joint tort-feasors, cannot, by a reservation in the release given, preserve his claim or cause of action against the other claimed joint tort-feasor, but, that if by the transaction he does not receive satisfaction of his claim or cause of action, a release with reservations would be regarded as the equivalent of a covenant not to sue. * * *

"An analysis of the Iowa cases makes it clear that satisfaction has been, and is, a requisite of release. 28 Iowa Law Review 515 (1943) ; 7 Iowa Law Review 170 (1922). The Iowa cases relating to releases, releases with reservations, and covenants not to sue are consistent and explainable in light of the basic doctrine underlying them, *that an injured party may have but one satisfaction for a single injury,* Metz v. Soule, Kretzinger Mfg. Co., supra; Turner v. Hitchcock, supra. This principle is stated in almost every Iowa case that is in any way connected with the problem of a possible double recovery for a single injury. What the Iowa Court has tried to determine in each case is whether the injured party has received 'one satisfaction,' i.e., a full satisfaction, or sometimes referred to as 'full compensation,' for the injury suffered. If this is found to be the case, then it rightly refuses to allow any further proceeding because the injured party has been put in legal *status quo* and additional recovery would be unwarranted. * * * But it seems clear that if the Iowa Supreme Court applies the maxim 'a release of one joint tort-feasor releases all' at all, it does so only after it has been determined that the injured person has received full satisfaction for his injury. It is believed that the Iowa rule is correctly stated in the case of Hutchinson v. Treloar, 1940, 229 Iowa 513, 294 N.W. 787, wherein the Court states: 'This court has repeatedly recognized and applied the rule that where two parties are asserted to be jointly liable in tort, a satisfaction of the cause of

action against one joint tort-feasor is a satisfaction against all. * * *' And in 28 Iowa Law Review 515 (1943), at page 528, the writer summarizes the rules relating to releases, releases with reservation, and covenants not to sue, as follows: '* * * In Iowa, then, the rules work very well. Anything but full satisfaction results in *pro tanto* discharge, from whomsoever received. There can be but one satisfaction, but there can always be one.' "

The Federal Court then held that the parties to the instrument there involved had clearly and definitely negatived the idea that the sums referred to represented satisfaction of their claims. In the case at bar the parties to the agreement not to proceed clearly and definitely negatived the idea that the $19,-000 paid by the Harnisches represented full satisfaction of their entire claims.

II. In Gronquist v. Olson, 242 Minn. 119, 128, 129, 64 N.W. 2d 159 (cited by us in Pedersen v. Bring, supra), the Minnesota Supreme Court said: "We believe that the factors determinative of whether a release of one of several joint tort-feasors will operate to release the remaining wrongdoers should be and are: (1) The intention of the parties to the release instrument, and (2) whether or not the injured party has in fact received full compensation for his injury. If we apply that rule, then, where one joint tort-feasor is released, *regardless of what form that release may take,* as long as it does not constitute an accord and satisfaction or an unqualified or absolute release, and there is no manifestation of any intention to the contrary in the agreement, the injured party should not be denied his right to pursue the remaining wrongdoers until he has received full satisfaction. See, City of Covington v. Westbay, 156 Ky. 839, 162 S.W. 91. Where the intention of the parties is clear from the contents of the instrument, it ought not to be necessary to resort to legal fiction in order to reach just and proper results. See, 22 Minn. L. Rev. 692. * * *

"We are not aware of any compelling reason to justify precluding a person who has sustained an injury through the wrongful act of several persons from agreeing with one of the wrongdoers who desires to avoid litigation to accept a sum by way of partial compensation and to discharge that wrongdoer

from further liability without releasing his right of action as against the other wrongdoers for the remainder of the judgment. Compromises are favored generally in the law, and it would be inconsistent to regard such arrangements with disfavor."

III. The foregoing authority is consistent with the prior Iowa cases, the analysis in Bolton v. Ziegler here approved and the necessities of modern litigation. It is in line with the growing weight of authority as noted in the valuable annotation found at 73 A. L. R.2d 403, 425: "§11 Intention rule; illustrative cases. The modern view repudiates the common-law rule under which the release of one tort-feasor automatically discharges the liability of the others, and makes the intention of the parties to the release the test of whether it effects the release of other tort-feasors who are not parties thereto."

We therefore conclude that the instrument here examined is not such as to give rise to the common-law rule that the release of one tort-feasor releases all.

IV. We do not believe that the result here reached necessitates our overruling either Dungy v. Benda or Pedersen v. Bring. In the former case this court felt that classic release verbiage there used impelled a conclusion of intent to satisfy the entire judgment. We need not here reexamine the validity of refusal to consider extraneous evidence in the light of such authorities as McKenna v. Austin, 77 App. D. C. 228, 134 F.2d 659, 148 A. L. R. 1253 (opinion by Mr. Justice Rutledge, then Associate Justice of the United States Court of Appeals for the District of Columbia), Breen v. Peck, 28 N. J. 351, 146 A.2d 665, 73 A. L. R.2d 390, and the wealth of authorities cited therein and in the accompanying A. L. R. annotations. Such problems are not now before us because the parties here did not execute a release in classic form, but rather, executed an instrument that clearly negatived any intent to accept full satisfaction for the entire injury. On the other hand Pedersen v. Bring allowed extrinsic evidence as to intent even though the defendants with whom settlement was accomplished were clearly protected from further action on part of the plaintiffs.

V. We note that the right of pro tanto credit for the

proceeds of the Harnisch settlement is not in issue here. Such pro tanto credit is, of course, to be allowed, if necessary, in arriving at any future judgment in favor of plaintiffs against Bahlmann. The mechanics of allowing such credit are discussed in Bolton v. Ziegler, supra, at pages 531, 532 of 111 F. Supp. citing 28 Iowa Law Review 515, Frideres v. Lowden, 235 Iowa 640, 17 N.W.2d 396, Greiner v. Hicks, 231 Iowa 141, 300 N.W. 727, and other authorities.

This pro tanto credit directly affects the question of whether or not the plaintiffs have in fact received full satisfaction for their entire claims. For if the jury finds that plaintiffs' total damages aggregate $19,000 or less, the judgment will be nil. Either the jury under proper court instructions or the court, depending on the mechanics used, will subtract the amount paid by the Harnisches from the value damages found to have been suffered. In no event, under such arrangement, can a double recovery eventuate.

VI. The wealth of authority on this subject by way of judicial opinions, law review articles, textbook authorities, restatements and proposed uniform codes is so great as to preclude extended discussion here. We are comforted by the observation that most, if not all, of these sources have been collected in McKenna v. Austin, Bolton v. Ziegler, Breen v. Peck, Gronquist v. Olson, all supra, and the authorities noted therein. It seems futile to repeat citations already noted by those courts.

Since we conclude that the agreement not to proceed is clear and unambiguous and that it was not meant to and does not protect any defendants other than the Harnisches, the case must be reversed and remanded for further proceedings consistent with this opinion.—Reversed and remanded.

All JUSTICES concur except THORNTON, J., not sitting.