**Judy Kay SMITH, a minor, by her Conservators, Curtis Smith and Jeanette Smith, Appellant,**

v.

**R. W. CONN, D.O., Appellee.**

**No. 53038.**

Supreme Court of Iowa.

Dec. 10, 1968.

Dunkelberg & McKinley, Osage, for appellant.

Alex M. Miller and D. J. Fairgrave, Des Moines, and D. W. Harris, Bloomfield, for appellee.

BECKER, Justice.

This case reaches us by way of authorized interlocutory appeal from ruling on motion to determine law point under rule 105, Rules of Civil Procedure. Action was commenced in the minor plaintiff's name by her conservators. Divisions I and III of the petition alleges Judy Smith broke her leg as a result of a fall on the property of Church of Christ of Bloomfield, Iowa. Defendant, an osteopathic physician, was employed to set her leg and treat her injuries. Plaintiff alleges Dr. Conn performed his duties negligently and further alleges he was guilty of wanton and gross negligence in several respects. In Division II plaintiff proceeds on a contract theory.

Defendant, as part of his answer, alleged plaintiff had, through properly appointed conservators, settled her claim with the Church of Christ and executed a complete release of all liability in connection therewith. The releases and pertinent probate court conservator's papers were appended to the answer and incorporated by reference. After appropriate reply by plaintiff, defendant moved for adjudication of law point. He urged the settlement and release with the Church of Christ barred action against the defendant as subsequent treating physician. This contention was sustained.

The pleadings of both parties are extensive documents. There is little dispute as to the operative facts upon which this decision must turn. Plaintiff, Judy Smith, was injured on April 21, 1965. Defendant treated and advised her until September 4, 1965. Plaintiff moved to Minnesota while the above treatment was performed and from June 21, 1965 to January 1966, Judy was under the care of Dr. Stoike, another osteopathic physician in Austin, Minnesota. In November, 1965 Dr. Stoike referred plaintiff to Dr. Hoover at the Mayo Clinic, Rochester, Minnesota. Dr. Hoover recommended a rotation osteotomy of the right tibia. This operation was performed June 29, 1966. On January 12, 1967 Judy's parents executed releases to the Church of Christ both for themselves as parents and for Judy as conservators. The latter release was approved by the court in a conservatorship proceedings on January 19, 1967. The order recites the court read and inspected the medical reports before approving the settlement.

The release executed by the conservators and approved by the court read in part: "[W]e hereby acknowledge payment to us as Conservators of the property of Judy Kay Smith, a minor, of the sum of Four

thousand seven hundred eight and no/100 —($4,708.00) DOLLARS, in consideration for which payment we each do hereby release, acquit and forever discharge the Church of Christ, of Bloomfield, Iowa, * * * Zurich-American Insurance Company; General Casualty Company of Wisconsin; Sheri Childs; William Edgar Stockham, a minor, born on the 1st day of May, A.D., 1953; Billie L. Stockham and Jean Stockham, husband and wife, the natural parents of William Edgar Stockham, a minor, and all other persons, firms and corporations, from any and all liability whatsoever, including all claims, demands and causes of action of every nature affecting us or either of us jointly or severally, which we or either of us may have or ever claim to have by reason of an accident or event which occurred on or about the 21st day of April, A.D., 1965, in the basement of the Church building * * *

"1. This release covers all injuries and damages, whether known or not and which may hereafter appear or develop arising from the matters above referred to."

Defendant urged: "3. Having given a release to the original wrongdoer for $4,708, there was an accord and satisfaction. The present action cannot be maintained under these circumstances. Phillips v. Werndorff, 215 Iowa 521, 243 N.W. 525."

The trial court, after careful study of our cases and recognition of recent cases in other states, reluctantly agreed with defendant that, under our case Phillips v. Werndorff, supra, the release absolved the doctor from liability. The trial court acted correctly under our prior cases but plaintiff argues the rule in Phillips v. Werndorff, supra, should be changed. We agree and therefore reverse and remand.

I. The legal propositions set out in the Phillips case are (1) aggravation of an injury resulting from the unskillful treatment of a physician, if reasonable care was observed in his employment, is one of the elements of damages for which the original wrongdoer is liable; (2) only one satisfac-

tion for an injury received may be had; "that is to say, that, if a settlement and release is obtained from one who is liable for all of the suffered injuries and compensation made therefor, no action may be maintained against another, who may also have been liable for the whole or some part thereof;" (3) these rules have been applied in actions for malpractice against the physician or surgeon who treated the injury.

Although the general principle that there may be but one satisfaction for an injury received does not necessitate the broad rule as stated in proposition (2) above (see Bolton v. Ziegler (D.C., Iowa), 111 F. Supp. 516), it may be conceded Phillips v. Werndorff, supra, placed Iowa with the existing majority of states referred to in the annotation at 40 A.L.R.2d 1075, 1078: "Apart from particular theories, it is the great weight of authority that a general release executed in favor of one responsible for the plaintiff's original injury, at least if a different intention is not positively revealed by the language of the release, or the circumstances, precludes an action against a physician or surgeon for damages incurred by his negligent treatment of the injury, at least in the absence of a finding that the negligence of the physician or surgeon produced an entirely new injury."

The minority rule is stated: "A small minority of courts have held that a release by an injured party of the one responsible for the injury does not of itself, in the absence of language indicative of an intention on the part of the parties, preclude an action by the injured person against a physician or surgeon for negligent treatment of the injury, at least unless there has been full compensation in fact for the plaintiff's total injuries." As will be seen, the small minority has grown in the past few years.

Iowa and twenty other jurisdictions are cited as states following the majority rule in 1955 when the annotation was published. Since then the later case service notes sev-

eral states which have changed their position and now explicitly follow the minority rule.

Listed in support of the minority rule in the original annotation are California, Ash v. Mortensen, 24 Cal.2d 654, 150 P.2d 876; Dickow v. Cookinham, 123 Cal.App.2d 81, 266 P.2d 63, 40 A.L.R.2d 1066; New Hampshire, Wheat v. Carter, 79 N.H. 150, 106 A. 602. By later case service we find Massachusetts, Selby v. Kuhns, 345 Mass. 600, 188 N.E.2d 861; Minnesota, Couillard v. Charles T. Miller Hospital, Inc., 253 Minn. 418, 92 N.W.2d 96; Nevada, Hansen v. Collett, 79 Nev. 159, 380 P.2d 301; New Jersey, Daily v. Somberg, 28 N.J. 372, 146 A.2d 676, 69 A.L.R.2d 1024; New York, Derby v. Prewitt, 12 N.Y.2d 100, 236 N.Y.S.2d 953, 187 N.E.2d 556; North Carolina, Galloway v. Lawrence, 263 N.C. 433, 139 S.E.2d 761; Oregon, (Federal court applying Oregon law) Rudick v. Pioneer Memorial Hospital (9 Cir.), 296 F.2d 316; and Washington, DeNike v. Mowery, 69 Wash.2d 357, 418 P.2d 1010, now adopt the minority rule. Most of the foregoing states were listed with the majority when the annotation was published but have changed position since that time. On the other hand numerous cases are cited where the appropriate court has continued to follow the majority rule. Our real concern here is the validity of the common law rule, "The release of one joint tort-feasor releases all," as applied to a subsequent or successive tort-feasor; i. e., a physician treating injuries received from the original wrongdoer.

The cases have generally recognized a distinction between the rule of unity of discharge by release as applied to joint or concurrent tort-feasors on the one hand and successive tort-feasors on the other. In New York Court of Appeals in Derby v. Prewitt, 12 N.Y.2d 100, 236 N.Y.S.2d 953, 958, 187 N.E.2d 556, 559, Fuld, J.: "As to the first asserted basis for the rule, it is obvious that the taxicab driver and the doctor, having neither acted in concert nor contributed concurrently to the same

wrong, are not joint tort-feasors. (See Matter of Parchefsky v. Kroll Bros., 267 N.Y. 410, 413–414, 196 N.E. 308, 310–311, 98 A.L.R. 1387.) Their wrongs were independent and successive, rather than joint, and this being so, the plaintiff had not one but two separate and distinct causes of action, one against the cab driver for the negligent operation of his vehicle and the other against the doctor for his alleged malpractice in treating the fracture which the plaintiff sustained in the automobile accident. It is true that the driver could have been held liable for the aggravation of the injury caused by the doctor's negligence but, as pointed out above, that liability is not the result of any concept of joint wrongs but is rather the product of the familiar rule that a wrongdoer is responsible for the reasonably foreseeable consequences of his tortious act, including the negligent conduct of others. Conversely, it would defy reason to hold the physician liable for injuries caused by the original wrongdoer which were not the consequences of his own carelessness, and no one suggests that a release of the doctor would completely discharge the original wrongdoer.

"Nor does the second asserted reason for the release doctrine—the presumption of full satisfaction—make any sense in the context of this case. Irrebuttable presumptions have their place in the law but only where public policy demands that inquiry cease. Where the cause of action is single and the liability of one wrongdoer is identical with that of the other, there may be warrant for erecting such a barrier to suit after settlement. However, where, as here, neither of these elements is present, there is no basis or justification for preventing the plaintiff, by an artificial rule of law, from recovering the full compensation to which she would otherwise be entitled for her injuries.

"Since, therefore, neither the joint tort-feasor doctrine nor the reasons underlying it are here applicable, we may not say, as a matter of law, that the release executed by

the plaintiff bars the present action. In the light of our analysis, the question for resolution, and it is to be decided as an issue of fact upon a trial, is whether the plaintiff's settlement with the taxicab driver did actually constitute satisfaction of all damages caused by his wrong or was intended as such. If it did, or was so intended, no claim remained against the doctor. But, if it did not reflect full satisfaction, and was not so regarded—and the burden of proving this essential fact rests upon the plaintiff—the release will not prevent recovery against the doctor." Other strong allusions to the *successive* nature of the claim of this kind may be found in the above cited cases.

The analysis found in those cases finds support in our own rejection of Phillips v. Werndorff, supra, in an analogous field. Relying heavily on Phillips v. Werndorff, Paine v. Wyatt, 217 Iowa 1147, 251 N.W. 78 held an injured workman could not sue a surgeon for malpractice in treating an injury for which workmen's compensation is payable. In Bradshaw v. Iowa Methodist Hospital, 251 Iowa 375, 388, 101 N.W. 2d 167, 175, we overruled Paine v. Wyatt, supra, with the following observation: "The opinion overlooks several decisions of ours, heretofore cited, and many from other jurisdictions, some of which are cited, that the compensation act does not abolish tort actions except as between employee and employer. The act was not intended to, and does not, confer rights or benefits upon third parties not subject to any of its burdens. We think the correct approach is to inquire whether the compensation law abolishes tort actions against third parties, not whether it expressly authorizes them. Paine v. Wyatt, supra, also overlooks the fact the statutory scale of compensation is quite different from full damages resulting from a tortious act for which damages the employer is not liable." We held the Workmen's Compensation Law does not prohibit action against a physician for a claim of subsequent negligence in treating the injury.

Insofar as Phillips v. Werndorff, supra, implies a complete release to an original tort-feasor conclusively releases the treating physician from liability for subsequent negligence, the case is overruled. We adopt what is now the minority rule, well expressed in DeNike v. Mowery, 69 Wash.2d 357, 418 P.2d 1010, 1018: "However, the modern trend in judicial decisions, and the alternative most favored by law review commentators, allows a recovery by an injured party in an action against the treating physician for malpractice even though the patient has settled his claim against the original tort-feasor. These jurisdictions submit to the trier of fact the question of whether the injured plaintiff intended to release the physician at the time of settlement and, furthermore, allow the trier of fact to decide whether the earlier settlement, in fact, compensated the injured plaintiff for the malpractice which accompanied treatment of the original injury."

II. The trial court also relied on Dungy v. Benda, 251 Iowa 627, 102 N.W.2d 170; Pedersen v. Bring, 254 Iowa 288, 117 N. W.2d 509 and Johnson v. Harnisch, 259 Iowa 1090, 147 N.W.2d 11. All of those cases involve joint or concurrent tort-feasors. Our consideration is confined, in line with the authorities cited, to those situations where the defendant is charged with a *subsequent* wrong which contributes to the damage for which the original wrongdoer was liable.

III. Recent analysis of the parol evidence rule by this court has aided us in arriving at the conclusion found in Division I. In Hamilton v. Wosepka, Iowa, 154 N. W.2d 164, 168, we quoted Professor Corbin in the preface to Volume 3 of his work: " 'The purpose of interpretation as justice requires is always the discovery of actual intention:—the intentions of both parties if they are the same,—the actual intention of one party if the other knew or had reason to know what it was,—but absolutely never to give effect to the meaning of words that neither party in fact gave them, however

many other people might have given them that meaning.' "

Rasch v. City of Bloomfield, Iowa, 153 N.W.2d 718, 723: " 'Evidence of the circumstances is always admissible in aid of the interpretation of an integrated agreement. This is so even when the contract on its face is free from ambiguity.' Atlantic Northern Airlines v. Schwimmer, 12 N.J. 293, 96 A.2d 652, 656."

In any event it has long been held in this state that the parol evidence rule does not apply when one who is not a party to the instrument seeks to claim an advantage under it. Pedersen v. Bring, 254 Iowa 288, 292, 117 N.W.2d 509; Middaugh v. Des Moines I. & C. S. Co., 184 Iowa 969, 984, 169 N.W. 395, 400; Annotation, 13 A.L.R.3rd 314, 319, 344.

IV. The question, pertinent to this appeal, raised by plaintiff's allegations of gross negligence as a basis for avoiding the effect of Phillips v. Werndorff, supra, is now moot. The controversy between the parties as to this court's recognition or rejection of the concept of gross negligence must nevertheless be resolved in light of the prayer for exemplary damages.

Plaintiff cites Cochran v. Miller, 13 Iowa 128 and Sebastian v. Wood, 246 Iowa 94, 66 N.W.2d 841 for the assertion that gross negligence is recognized in Iowa. Defendant cites Werthman v. Catholic Order of Foresters, 257 Iowa 483, 133 N.W.2d 104 and Tisserat v. Peters, 251 Iowa 250, 99 N.W.2d 924 as authority for the assertion that there are no degrees of care or negligence in Iowa.

The two cases cited by plaintiff clearly recognize gross negligence as a basis for claimed exemplary damages. The two cases cited by defendant equally clearly refuse to allow allegations of gross negligence as a predicate for compensatory liability. Under the language of our cases, gross negligence is recognized in connection with exemplary damages but in that connection only.

V. Determination of plaintiff's contention that the injury occasioned by the claimed negligence of defendant is so remote as not to be within the doctrine of Phillips v. Werndorff, supra, is also now unnecessary. If the matter becomes important in connection with further proceedings in this case, the decision must rest on the facts presented to the court. On the pleadings as presented to us we view the situation as different from the facts presented in Frost v. Des Moines Still College of Osteopathy and Surgery, 248 Iowa 294, 79 N.W.2d 306, relied upon by plaintiff.

VI. We have considered plaintiff's other contention as to the claim that proceeding on a contract theory takes this case out of the operation of the Phillips v. Werndorff principle. We also consider this contention is now moot. Cf. Derby v. Prewitt, supra.

VII. Defendant strenuously argues Phillips v. Werndorff, supra, must be considered in light of the approval of the settlement by the district court sitting in probate. We find no reason to give either more or less weight to the settlement between plaintiff and the church for that reason. Plaintiff was a minor. For the settlement to be binding on her it was necessary to submit the matter to the court and receive its approval. There is no evidence the court injected itself into the negotiations between the parties. True, the court had the benefit of medical reports. This alone does not establish that the court approved, or even considered, the matter of settlement as between plaintiff-ward and Dr. Conn. The court order as actually written authorizes settlement with the church, two insurance companies, and four individuals. It does not refer to Dr. Conn and does not refer to "all other persons, firms and corporations" as does the release used. The order simply approves the settlement negotiated, as presented to the court and authorizes execution and delivery "of any and all necessary releases or other instruments to fully effectuate *this compro-*

*misc and settlement* of an unliquidated tort claim." (Emphasis supplied.) This procedure approves the compromise settlement between the parties. It does not necessarily affect the position between the ward and defendant who was not a party. It would be a strange doctrine that would recognize a need to modify Phillips v. Werndorff, supra, as between adults but would continue to insist on full rigor of the doctrine as against a minor, simply because the court approved and at least to some degree supervised the settlement.

VIII. Finally, defendant contends plaintiff has no right to review because the statement of facts contained no reference to the record and the assignment of error was too general. While record references should have been given under the plain statement in our rule 344(a) (2), R.C.P., plaintiff's neglect to do so is excusable where the record consists entirely of the pleadings, motion and court order. There is no claim of misstatement of the record. Whatever inconvenience may have been caused the opponent or this court is not grounds for such summary disposition of the case.

We do not believe the brief point relied upon by plaintiff was so general as to mislead or prejudice defendant. The statement of the error and brief points that followed fully apprised defendant and this court of plaintiff's position. Jerrel v. Hartford Fire Ins. Co., 251 Iowa 816, 817, 103 N.W.2d 83, 84, 80 A.L.R.2d 1281 says:

"At the outset, plaintiffs urge defendant, in its (appellant's) Brief and Argument, has not complied with rule 344(a) (3), Rules of Civil Procedure, 58 I.C.A., and no question is presented for review. While there is not a strict compliance with the rule, the errors relied on are sufficiently clear that neither counsel for plaintiffs nor this court has been misled. We will pass on the merits where prejudice, if any, to appellee is slight." Defendant's contentions on these points are without merit.

Defendant's counterclaim will, of course, be subject to trial on remand.

Reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.

All Justices concur.